In re Thomas J. BRINKMAN and Carol L. Brinkman, Debtors.

Bankruptcy No. 90–10962.

United States Bankruptcy Court, N.D. Indiana, Fort Wayne Division.

Jan. 15, 1991.

Terry L. Cornelius, Fort Wayne, Ind., for debtors.

R. David Boyer, Fort Wayne, Ind.

## DECISION

ROBERT E. GRANT, Bankruptcy Judge.

This matter is before the court on the debtors' petition to file reaffirmation agreement post-discharge or alternatively to revoke discharge for the purpose of approving reaffirmation agreements. The motion involves debtors' obligations to four separate creditors, Peoples Federal Savings Bank, which apparently holds a first mortgage on their residence; Graber Homes, Inc., the second mortgage holder; Resort Development International, Inc., the holder of a mortgage on a condominium located in Florida; and two obligations to DeKalb County School Employees Federal Credit Union, one of which is secured by a motor vehicle, the second of which is secured by carpeting and appliances.

Debtors filed a petition for relief under Chapter 7 of the United States Bankruptcy Code on June 28, 1990. Upon doing so, they filed the statement of intention required by § 521(2)(A) of the Bankruptcy Code, indicating that they intended to reaffirm each of these obligations.

On July 11, 1990, the court issued a notice to the debtors, their creditors and all parties in interest of the bankruptcy and the various timetables applicable to this proceeding. This order established October 1, 1990 as the deadline for filing complaints concerning the debtors' right to a discharge or the dischargeability of their obligations. It also required that reaffirmation agreements had to be executed and filed with the court by this date. On September 13, 1990, American General Finance, Inc. filed a motion seeking to extend the deadline for dischargeability complaints or reaffirmation agreements through and including December 1, 1990. Notice of this motion was issued to all creditors and parties in interest, giving them until October 13, 1990 within which to object. On October 11, 1990, the application was withdrawn, with the affirmative consent of debtors' counsel. The withdrawal was approved by the court on October 15, 1990. Thereafter, on October 24, 1990 debtors were discharged.

Based upon the information contained in the debtors' bankruptcy schedules, it seems that the trustee believed that the value of their residence exceeded the amounts due on account of the liens against it and debtors' claimed exemption of $15,000, so that, if the property were sold, it would generate funds which could be distributed on account of unsecured creditors. Following the first meeting of creditors, the debtors and the trustee entered into negotiations concerning this "excess equity." These negotiations resulted in a compromise by which the debtors have agreed to purchase the "excess equity" from the trustee. This agreement was apparently reached in early November of 1990 and the trustee filed a motion to sell the property to the debtors, subject to the first and second mortgages, on November 9, 1990. Until the trustee had made his determination concerning the disposition of their residence, debtors' motion indicates they had no desire to execute reaffirmation agreements with the creditors that held mortgages on that property.

It is the entry of their discharge on October 24, 1990 that prompted the debtors to file the current motion on December 27, 1990. The Bankruptcy Code sets forth specific requirements for an enforceable reaffirmation agreement. A reaffirmation is enforceable "only if—such agreement was made *before* the granting of the discharge." 11 U.S.C. § 524(c)(1) (emphasis added). As a result, a debtors' agreement to repay a pre-petition debt is not enforceable unless that agreement was entered into before the discharge was granted. This does not, however, prevent a debtor from voluntarily repaying a discharged debt. 11 U.S.C. § 524(f). It merely means that a debtor may not be compelled to do so.

■ Since these debtors were discharged on October 24, 1990, they may not now validly reaffirm their obligations to the creditors in question. "Once the court has entered the order of discharge the § 524(c)(1) deadline for making such an agreement has passed." *In re Gruber*, 22 B.R. 768, 770 (Bankr.N.D.Ohio 1982). Consequently, "reaffirmation agreements must

be entered into *prior to* discharge to have legal significance. Those entered into after entry of a discharge are unenforceable, and are of no legal significance." *In re Eccleston*, 70 B.R. 210, 212 (Bankr.N.D.N.Y.1986) (emphasis original).

■ Debtors recognize the statutory problems created by their post discharge effort to reaffirm their obligations to secured creditors. For this reason, the motion has requested alternative relief which would revoke the discharge previously granted, in an effort to validate the untimely reaffirmation agreements. Although the motion does not request it, presumably the debtors would then want the court to re-enter the discharge at a later date rather than receive no discharge whatsoever. This court holds that it is unable to grant the relief the debtors seek.

Revocation of a discharge is governed by § 727(d) of the United States Bankruptcy Code. By the specific language of this section only the trustee, a creditor, or the United States Trustee are authorized to seek such relief. Furthermore, the circumstances necessary to justify the revocation of a discharge are quite limited. A discharge may only be revoked if it was obtained through fraud or because of some type of debtor misconduct during the case.

The language of § 727(d) is unequivocal. "Revocation of discharge can only be by the timely request of a trustee or a creditor, and only based on the grounds set out therein." *In re Leiter*, 109 B.R. 922, 925 (Bankr.N.D.Ind.1990). "There is no provision for the setting aside of a discharge upon the insistence of the debtors themselves, nor is there a provision that the debtors' desire to reaffirm a debt is cause for revocation of a discharge." *Matter of McQuality*, 5 B.R. 302, 303 (Bankr.S.D. Ohio 1980). *See also In re Burgett*, 95 B.R. 524 (Bankr.S.D.Ohio 1988). *Gruber*, 22 B.R. at 769; *Matter of Morgan*, 668 F.2d 261, 263 (7th Cir.1981). "The lack of creditor objection or consent by the trustee cannot supply such authority." *Matter of Calabretta*, 68 B.R. 861, 863 (Bankr.D. Conn.1987). Consequently, "[u]nder no circumstances is Code § 727(d) to be used as a

vehicle for the revocation of a discharge for the 'limited purpose' of effectuating a reaffirmation agreement." *In re Eccleston*, 70 B.R. at 213 (citations ommitted). Furthermore, the "bankruptcy courts do not have an inherent authority to revoke discharges." *Morgan*, 668 F.2d at 264.

While the court can, perhaps, understand the debtors' reluctance to reaffirm their obligations to the mortgage holders until the trustee had made a decision as to whether or not they would be allowed to retain their residence, the court would note that the bankruptcy rules provide a specific mechanism by which the situation currently before it can be avoided.[1]  Pursuant to Bankruptcy Rule 4004(c):

> [O]n motion of the debtor, the court may defer the entry of an order granting a discharge for 30 days and, on motion within such period, the court may defer entry of the order to a date certain.

Consequently, if the debtor is encountering difficulties or delays in making the decision whether or not to reaffirm, or in negotiating and executing a reaffirmation agreement, it need only ask the court to defer the entry of the discharge in order to accommodate the timing problems. *See Gruber*, 22 B.R. at 770. When the bankruptcy rules specifically provide such a simple and efficient tool, there should be no reason to resort to extraordinary remedies. As Chief Judge Lindquist has observed:

> The Debtor and his creditors must be diligent in examining the available legal options prior to discharge and if time does not permit the Debtor has the remedy under Bankr.R. 4004(c) of obtaining an order on his motion to delay entry of the discharge order ... *Leiter*, 109 B.R. at 925.

Even though the court is unable to validate the debtors' post discharge reaffirmation agreements or to revoke their discharge so that those agreements might become timely, this does not mean that the debtors are without any remedy whatsoev-

er.  Chief Judge Lindquist, in confronting a similar scenario, observed, without specifically approving, that there were three possible alternatives which might be available. *See Leiter*, 109 B.R. at 926.  Assuming that such alternatives may be available, debtors will have to take advantage of one of them.

An order will be entered denying debtors' motion.

---

1. The debtors' reluctance to reaffirm the obligations to the first and second mortgage holders does not explain their pre-discharge reluctance to reaffirm the debts to the other creditors in-

volved, who hold liens upon property which the trustee apparently was not considering administering for the benefit of creditors.