**Edwin R. VAN METER, Plaintiff,**

v.

**AMERICAN STATE BANK, Defendant.**

**Civ. No. 88–2120.**

United States District Court,
W.D. Arkansas,
Fort Smith Division.

Aug. 1, 1988.

W. Asa Hutchinson, Fort Smith, Ark., for plaintiff.

Stephen A. White, Charleston, Ark., for defendant.

## MEMORANDUM OPINION

MORRIS SHEPPARD ARNOLD,
District Judge.

In 1972, plaintiff Edwin Van Meter borrowed $1,955.88 from defendant American State Bank. In 1977, plaintiff was adjudged a bankrupt, and his debts were discharged. The outstanding debt to defendant American State Bank, by that time reduced to $741.70, was included in that discharge.

In 1985, plaintiff Van Meter applied to defendant American State Bank for a home mortgage loan. As a condition of obtaining the mortgage loan, plaintiff Van Meter alleges, he was required to borrow an additional $1,044.94 to repay the debt that had been discharged in bankruptcy.

Plaintiff Van Meter has sued defendant American State Bank, alleging, first, that the condition imposed on him was an unlawful tying arrangement and, second, that the imposition of that condition on him was a violation of the bankruptcy statute's prohibition against acts to recover discharged debts.

Defendant American State Bank has now moved to dismiss. The motion will be granted as to the first count and will be denied as to the second, for the reasons stated below.

### I.

■ The provisions of 12 U.S.C. § 1972(1)(A) prohibit banks from "extend[ing] credit ... or fix[ing] or vary[ing] the consideration for [an extension of credit] on the condition or requirement ... that the customer shall obtain some additional credit ... from such bank other than a loan, discount, deposit or trust service." The purpose of these provisions is to prohibit anti-competitive banking practices that require bank customers to accept or provide some other service or product or refrain from dealing with other banks in order to obtain the service or product de-

sired. *See, e.g., Duryea v. Third Northwestern National Bank of Minneapolis,* 606 F.2d 823, 825 (8th Cir.1979).

Plaintiff alleges that the bank required him to obtain an additional loan as a condition to the bank's approval of his home mortgage loan. *See* ¶¶ 5, 6, 7 of complaint. By its very terms, however, 12 U.S.C. § 1972(1)(A) excludes loans from the conditions that a bank may not impose before it extends credit. *See also Exchange National Bank of Chicago v. Daniels,* 768 F.2d 140, 143–44 (7th Cir.1985). The court finds, therefore, that the complaint fails to state a claim on its face,[1] and the motion to dismiss will be granted as to count 1.

### II.

A bankruptcy discharge operates as an injunction forbidding "the commencement or continuation of an action, the employment of process, *or an act,* to collect, recover or offset any [discharged] debt as a personal liability of the debtor." *See* 11 U.S.C. § 524(a)(2) (emphasis supplied).

■ Defendant American State Bank contends that count 2 of the complaint, which alleges a violation of this statute, should be dismissed because only the bankruptcy court has jurisdiction over damage suits based on such violations. Defendant American State Bank cites no authority for this proposition, and the court has found none. The statute relating to the jurisdiction of the bankruptcy courts clearly is permissive, not mandatory. *See, e.g.,* 28 U.S.C. § 157(a), § 157(b)(1), § 157(c)(1), § 157(c)(2). The court believes that this argument is therefore without merit.

Defendant American State Bank further argues that the allegations of count 2 show nothing more than a "voluntary" repayment of a debt previously discharged. While 11 U.S.C. § 524(c) and 11 U.S.C. § 524(d), enacted in substance in 1970, make void[2] any reaffirmation agreements

---

1. The court's conclusions go to different aspects of the complaint from those raised by defendant American State Bank in its motion. The court does not reach in this opinion the questions raised by defendant American State Bank as to count 1.

2. The statute says only that nonconforming agreements are not enforceable, but the court

except those made before discharge and, in some instances, approved by the court, 11 U.S.C. § 524(f), added in 1984, goes on to provide that nothing in those previous sections "prevents a debtor from voluntarily repaying any debt." Collier's treatise opines that § 524(f) "states the obvious," but it does not go on to explain what the obvious is. *See* 3 *Collier on Bankruptcy* ¶ 524.04 at 524–24 (L. King 15th ed. 1988).

The question, therefore, is whether, assuming the facts of plaintiff Van Meter's complaint to be true, his act of repayment in this instance was "voluntary," within the meaning of § 524(f), or whether defendant American State Bank's negotiation of the relevant loan was "an act" to collect the discharged debt within the meaning of § 524(a)(2). The portion of § 524(a)(2) that prohibits "acts" to collect a discharged debt was, according to Collier, added in 1970 to prohibit "dunning by telephone or letter, or indirectly through friends, relatives, or employees, harassment, threats of repossession and the like." *Id.*, ¶ 524.01 at 524–7. While the acts alleged against the bank in this case hardly rise to that level, the question remains whether Congress intended to prevent creditors from acting in any way to recover their debts after discharge.

By allowing for the "voluntary" repayment of debts, Congress has not provided a lot of guidance. One kind of "voluntary" repayment is one that is spontaneous, that is, uninduced by anything other than the actor's own conscience, or, perhaps, by some inducement provided by a third party, not the creditor. If this is the only kind of repayment that Congress had in mind when it employed the word "voluntary," then the plaintiff's alleged actions in this case were not within § 524(f). On the other hand, the word "voluntary" is frequently employed to describe acts that are induced by exogenous forces which engage the actor's interest in experiencing gain or avoiding loss.

This is the sense in which the word is most often used in the law of contracts. When voluntariness in this sense is being inquired into and the idea of duress is introduced into the situation, then the question of whether an act is voluntary becomes more than a little murky. An example of this murkiness is provided by cases in which a court must determine whether a search resulted from the "voluntary consent," a seemingly redundant phrase, of a person searched. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973), where the Court indicated that the question of whether a consent was voluntary or the product of duress was to be determined from the "totality of all the circumstances," another apparently redundant phrase. The question of the voluntariness *vel non* of statements given by persons suspected of criminal activity raises similar difficulties though it has not, as yet, produced an identical test. *See generally* Kamisar, *What Is an "Involuntary" Confession? Some Comments on Inbau and Reid's Criminal Interrogation and Confessions*, 17 Rutgers L.Rev. 728 (1963).

■ This court is not inclined to believe that it was the intention of Congress to plunge the courts into this kind of miasma when it used the word "voluntary." What Congress seemingly wished to do when it enacted § 524(c) and § 524(d) was to forestall all inquiries about the voluntariness of discharge agreements with creditors by narrowly and rigidly defining what kinds of agreements were valid. The means that it chose, in this court's view, was to make void all post-discharge agreements. There is no reason to believe that the addition, in 1984, of § 524(f) was intended to undo that previous decision. The court therefore holds that the provisions of § 524(f) do not validate repayments of discharged debts that are in any manner induced by the acts of the creditor.[3]

---

interprets this to mean that they are void *ab initio* so that they may be rescinded even though fully executed.

**3.** It is, of course, theoretically possible that a repayment might be made due to duress on the

part of someone other than the creditor not acting as an agent of the creditor. Probably such repayments would not be voluntary within the meaning of § 524(f), but the problem of third-party duress is not presented by this case and thus is best left to another day.

The allegations contained in count 2 of the complaint therefore state a claim.

### III.

For the reasons stated, the court grants the motion to dismiss as to count 1 and denies it as to count 2.