**In re Alvin and Christina HUDSON, Debtors.**

**Alvin and Christina HUDSON, Plaintiffs,**

**v.**

**CENTRAL BANK, Defendant.**

**Bankruptcy No. 91–30722.
Adv. No. 93–3061.**

United States Bankruptcy Court, S.D. Illinois.

May 18, 1994.

William Mueller, Belleville, IL, for debtors/plaintiffs.

Dale Funk, O'Fallon, IL, for defendant.

## OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

After receiving their Chapter 7 discharge, debtors Alvin and Christine Hudson made payments on a debt they believed was still owing but which had, in fact, been discharged. The defendant, Central Bank ("Bank"), accepted the payments without advising the debtors they were no longer obligated on the debt. The debtors filed this

action for turnover and for sanctions, alleging that the Bank, through its inaction, caused the debtors to repay a discharged debt in violation of the injunction of 11 U.S.C. § 524(a)(2). The Bank, noting that the Code permits a debtor to voluntarily repay any debt, see 11 U.S.C. § 524(f), asserts that it was entitled to receive payments made by the debtors without any inducement on the Bank's part. Thus, the Bank contends, the debtors have no right to recover payments resulting from their mistaken belief.

The debtors filed their Chapter 7 bankruptcy petition on June 25, 1991, and scheduled the Bank as an unsecured creditor. The debtors obtained a discharge in November 1991 but mistakenly believed that their obligation to the Bank, which related to the debtors' purchase of windows, had not been discharged. Based on this belief the debtors continued to make payments to the Bank until February 1993, when their debt to the Bank in the amount of $3,100 was paid in full.

Debtor Alvin Hudson testified that in January or February 1992, after having mailed payments of approximately $1,000 to the Bank, he called the Bank to determine whether the payments had been received and to inquire why the Bank had not sent payment receipts as in the past. He was told that his account was closed and that a special account had been set up to receive his payments. When the debtor asked why the procedure had been changed regarding his account, a Bank employee told him this was the way management had instructed her to handle the account and that she could provide no further information.

In February 1993, the debtor delivered his final payment to the Bank. The employee taking his payment indicated she could not find his account on the Bank's computer. The employee left her desk for a few minutes and, upon her return, stated she had found his account in a file "hidden away" upstairs. When the debtor asked what she meant, the employee told him not to worry and that she would accept his payment.

Once his payments had been completed, the debtor spoke with David Birkhead, a collection supervisor for the Bank, and asked him why the Bank had taken his money when he didn't owe anything. Birkhead responded that he considered the payments to have been voluntary and refused the debtor's request to return the payments that had been made.

On cross-examination, the debtor stated that he was in Saudi Arabia on military duty during his bankruptcy proceeding and had tried to telephone his attorney to obtain his "bankruptcy papers" but did not seek specific information concerning his debt to the Bank. He was unable to speak with his attorney by phone and did not attempt to contact him by mail. The debtor reiterated his testimony that a Bank employee told him a special account had been set up, but indicated that she said to "keep making the payments [and] we'll keep accepting the payments." The debtor acknowledged that the Bank never contacted the debtors after their bankruptcy filing.

David Birkhead testified that he did not recall speaking with debtor Alvin Hudson in February 1993 and that the Bank made no effort to solicit payments from the debtors after June 1991. Birkhead stated that the debtors indicated prior to their filing that they would reaffirm their obligation to the Bank, but the debtors' attorney later told the Bank they would not reaffirm. On cross-examination, Birkhead denied having any conversations with Bank employees concerning the debtor's payment of the discharged debt and stated that he would assume anyone wanting to make such payments was acting upon the advice of counsel.

In this action for turnover and for sanctions, the debtors maintain that their payment of the debt to the Bank was not voluntary because it was based on a mistaken belief that the debt had not been discharged. They contend that the Bank, in failing to respond to their direct questions concerning their account, led them to make the payments and thus violated the injunction of § 524(a)(2) barring the collection of discharged debts.

■ Section 524(a)(2) provides that a bankruptcy discharge

operates as an injunction against ... an act to collect, recover or offset any [discharged] debt as a personal liability of the debtor.

11 U.S.C. § 524(a)(2). Notwithstanding this prohibition against the collection of discharged debts, § 524 provides that a debtor may repay debts that would otherwise be dischargeable, either by entering into a formal reaffirmation agreement, *see* 11 U.S.C. § 524(c) and (d), or by making voluntary payments in the absence of such an agreement. *See* 11 U.S.C. § 524(f).

▪ Section 524(f) states:

Nothing contained in subsection (c) or (d) of this section [requiring court approval of reaffirmation agreements] prevents a debtor from voluntarily repaying any debt.

Section 524(f) thus allows a debtor to repay a debt after bankruptcy even though a reaffirmation agreement is not obtained. In this way debtors may repay debts as they choose without being legally obligated in the event they later become unable to fulfill their intention.[1]

▪ The present case involving repayment of a discharged debt under the mistaken belief that the debt is still owing appears to be one of first impression, as the Court is aware of no case that addresses whether such payment is "voluntary" within the meaning of § 524(f). Courts construing § 524(f) have emphasized that this provision invalidates repayment that is induced in any manner by the act of a creditor. *See Van Meter v. American State Bank*, 89 B.R. 32, 34 (W.D.Ark.1988). Because a debtor's discharge and the injunction against creditor action are important components of the debtor's "fresh start," payments pursuant to § 524(f) must be truly voluntary and not the result of pressure or other inducement by sophisticated creditors. *See id.; In re Bowling*, 116 B.R. 659, 664 (Bankr.S.D.Ind.1990); *cf. In re Lillie*, 12 B.R. 860, 862 (Bankr. N.D.Ohio 1981) (repayment of debt through wage deduction was not voluntary due to implied pressure from employer-employee relationship).

Congress has provided little guidance on the meaning of voluntary repayment under § 524(f). While repayment due to harassment or duress by a creditor is clearly prohibited, it is unclear the extent to which a debtor's repayment must be free from other external influences. One meaning of "voluntary" would require that the repayment be spontaneous, that is, induced by nothing other than the debtor's own conscience. *See Van Meter*, 89 B.R. at 34. On the other hand, "voluntary" is often used to refer to actions resulting from one's interest in experiencing gain or avoiding loss. Under this interpretation, voluntariness would be determined from the totality of circumstances surrounding the repayment. *Id.*

The difficulty of attempting to ascertain a debtor's motivation for repayment under either of these tests is apparent. The Court does not believe Congress intended to burden courts with such a subjective inquiry in using the term "voluntary." *Id.* Rather, § 524(f) should be read in the context of other provisions of § 524 referring to the repayment of discharged debts. Subsections 524(c) and (d) narrowly define the validity of agreements to repay discharged debts, effectively voiding any repayment arrangement with a creditor that does not comply with its provisions. *Cf. id.* (debtor's repayment was not voluntary under § 524(f) where bank required debtor to borrow additional money to repay discharged debt as condition of obtaining mortgage loan); *In re Bowling* (transaction in which debtors were required to repay discharged debt in order to obtain new loan constituted unenforceable reaffirmation agreement, not voluntary repayment). Section 524(a)(2) likewise protects the debtor from making involuntary payments by forbidding creditor action to collect discharged debts. As a corollary to these provisions, § 524(f) serves to clarify that payments not induced by creditor action in violation of § 524(a)(2) or § 524(c) and (d) are permissible as voluntary payments.

---

**1.** Voluntary postpetition payments do not reobligate a debtor on the original debt, and the debtor can later change his or her mind without sanc- tion. *See* Ginsburg, *Bankruptcy: Text, Statutes, Rules,* § 12.12[e][1], at 12–108 (2d ed. 1991).

■ The Court finds that "voluntary" in § 524(f) is used in an objective sense as referring to repayment that is free from creditor influence or inducement, regardless of whether the debtor was motivated by forces unrelated to the creditor. Under this reading of § 524(f), the Court need not satisfy itself that the debtor's action was wholly spontaneous nor need it monitor the debtor's psyche to ascertain what forces motivated the debtor's repayment. Rather, the Court will examine the appropriateness of the creditor's actions to determine if any violation of the preceding subsections protecting the debtor's discharge occurred.

In the present case, the Court concludes that to the extent the debtors' repayment was motivated by a mistaken belief formed independently of action by the Bank, it may be said to be voluntary within the meaning of § 524(f). The debtors do not, and under the facts of this case cannot, deny that they acted freely in making the initial payments to the Bank following their discharge. The debtors insist, however, that the Bank's responses to their questions during the course of their repayment were misleading and thereby rendered their payments involuntary.

■ The Court finds that contrary to the debtors' assertion, the Bank employees to whom debtor Alvin Hudson spoke made no misrepresentations, and their responses were "misleading" only in the sense of being incomplete. Rather than reassuring the debtors that the debt's status remained the same, the employees' responses indicated that a change had occurred regarding the debtors' account. Thus, the responses presumably raised further questions in the debtors' minds, questions they could have pursued with their bankruptcy counsel.

While debtor Alvin Hudson stated at one point in his testimony that a Bank employee told him to "keep making payments," this testimony of a collection attempt by the Bank is unconvincing. The debtor's only reference to such a statement came after repeated questioning concerning his conversations with Bank employees, and he did not mention it in describing the same conversation during direct examination. Since the debtor could not identify the Bank employee with whom he spoke or specify when the alleged conversation took place, the Court gives little weight to this isolated reference that was inconsistent with the remainder of the debtor's testimony.

■ The debtors' argument here presumes that the Bank had an affirmative duty to determine the voluntariness of their payments and to advise them concerning the status of the discharged debt. Courts in fact situations involving automatic payroll deductions have imposed a duty on creditors receiving such payments to obtain a positive indication that the debtor is voluntarily assuming the prepetition debt. *See Matter of Hellums,* 772 F.2d 379 (7th Cir.1985); *Matter of Holland,* 21 B.R. 681 (Bankr.N.D.Ind. 1982). These courts reason that since the filing of a bankruptcy petition terminates the voluntary nature of an automatic payroll deduction, and since such automatic deduction constitutes a collection action, some formal evidence of the debtor's willingness to have the deductions continue is necessary in order to safeguard against inadvertent repayment. *Hellums,* 772 F.2d at 381; *Holland,* 21 B.R. at 687–88.

Unlike in cases involving automatic deductions, the debtors' transfer of funds in the present case was not automatic, and the debtors made payments on their own initiative without any prompting or other collection action by the Bank. The Bank was not obligated to advise the debtors concerning the effect of their bankruptcy discharge or the status of prepetition debts and, indeed, might have opened itself to liability if it had done so. Since the debtors in this case indicated prior to bankruptcy that they wished to reaffirm the debt to the Bank and later changed their minds, it was reasonable for the Bank to assume that the debtors had decided to repay the debt voluntarily without becoming obligated by a reaffirmation agreement. The Bank, having taken no action to collect the debt as in the automatic deduction cases, had no affirmative duty to determine the voluntariness of the debtors' repayment and, therefore, did not violate the injunction of § 524(a)(2) in accepting the debtors' payments.

The Court finds, accordingly, that the debtors' repayment of the discharged debt to the Bank based upon a mistaken belief that the debt was still owing constituted a voluntary payment under § 524(f) where it was made without any inducement or other collection action by the Bank. While the Bank was restricted from attempting to collect the debt through either express or implied duress, such as making repayment a condition for obtaining new credit, it had no duty under § 524(a)(2) to advise the debtors that the debt had been discharged prior to accepting payments. Thus, the Bank employees' responses to the debtors' questions concerning the account did not violate the injunction of § 524(a)(2) to the extent the employees failed to provide a complete description of the debtors' rights regarding the discharged debt.

For the reasons stated, the Court finds in favor of the defendant, Central Bank, and against the debtors on their complaint for turnover and for sanctions.

SEE WRITTEN ORDER.