# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1500

_____

Daina Marie DuBois, formerly     *
known as Daina Marie Hewlett;     *
Dean Roger DuBois, on behalf of     *
themselves and all others similarly     *     Appeal from the United States
situated,     *     District Court for the
    *     District of Minnesota.

         Appellants,     *
    *

      v.     *
    *

Ford Motor Credit Company,     *
    *

         Appellee.     *

_____

Submitted: October 19, 2001
Filed: January 16, 2002

_____

Before BOWMAN, RICHARD S. ARNOLD, and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

Daina and Dean DuBois appeal from the district court's[1] dismissal of their complaint against Ford Motor Credit Company (Ford Credit), wherein they asserted

---

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

that Ford Credit violated various provisions of the Bankruptcy Code and the Fair Debt Collection Practices Act (FDCPA) following their Chapter 7 bankruptcy discharge. We affirm the district court's dismissal.

I.

Because this appeal is from a dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), we take the facts as stated in the complaint, as well as any reasonable inferences that flow from them, as true. Abels v. Farmers Commodities Corp., 259 F.3d 910, 914 (8th Cir. 2001). The DuBoises filed for protection under Chapter 7 of the Bankruptcy Code in March 1996, at which time they were current on a vehicle lease that they had previously entered with Ford Credit. They listed the Ford vehicle as an asset on Schedule G of their bankruptcy petition and indicated that they intended to keep the vehicle and continue making payments. They made one payment after filing and before discharge. During the pendency of the bankruptcy proceedings and after receiving the post filing payment, Ford Credit sent a letter and preprinted form to the DuBoises' attorney, who returned the form, indicating their intent to keep the vehicle pursuant to the lease terms. Following their discharge on June 25, 1996, the DuBoises continued to make lease payments until July 1997,[2] at which time they approached a Ford dealership to lease a new vehicle. (Appellants' App. at 46.) During the negotiations for the second lease, Ford Credit informed the DuBoises that they owed approximately $2800 for excess mileage and wear and tear fees under the first lease, and that Ford Credit would enter the second lease with them only if they agreed to either pay those fees or roll them into the second lease. The DuBoises agreed to roll the fees into the second lease.

---

[2]The complaint alleges two different dates for commencement of the second lease: July 11, 1997, and November 11, 1997. (Appellants' App. at 5, ¶ 11; Appellants' App. at 6, ¶ 16.) It does not appear from the record that the DuBoises were ever delinquent on the first lease. The correct date that the second lease was commenced is immaterial to this appeal.

2

After making payments on the second lease for approximately two-and-a-half years, the DuBoises brought this action against Ford Credit,[3] alleging that Ford Credit violated § 524 of the Bankruptcy Code by accepting payments under the first lease following the discharge, by sending them payment reminders for payments following the discharge, and by requiring them to roll the excess usage charges into the second lease; alleging that the form letter that Ford Credit sent to their attorney was an invalid reaffirmation agreement under § 524(c) and a violation of the automatic stay provisions of § 362; and alleging that Ford Credit violated the FDCPA. The district court granted Ford Credit's motion to dismiss, finding that none of the payments violated the discharge injunction because they were all voluntary. See 11 U.S.C. § 524(f) (1994). The district court also dismissed the DuBoises' claim for damages based on allegations that the payment reminders and the form letter sent by Ford Credit violated § 524(a) and (c) of the Bankruptcy Code because nothing in the Bankruptcy Code provides a debtor a private cause of action for a creditor's violation of § 524. Additionally, the district court found that the form letter did not violate § 362's automatic stay because the letter was merely an attempt to allow the DuBoises to reaffirm the debt. Finally, the district court dismissed the FDCPA claim as barred by the statute of limitations.

II.

During oral argument, the DuBoises clarified that their appeal was limited to the issue of whether Ford Credit's requirement that they roll the excess usage charges from the first lease into the second lease violated § 524(a) and (c) of the Bankruptcy Act or the FDCPA. The DuBoises' claims may be dismissed pursuant to a Rule 12(b)(6) motion "only if it is clear that no relief can be granted under any set of facts that could be proven consistent with the allegations." Abels, 259 F.3d at 916 (internal

---

[3]The action was brought as a class action, but the DuBoises never sought class certification.

quotations and citations omitted).  However, the complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim to avoid dismissal.  See Briehl v. Gen. Motors Corp., 172 F.3d 623, 627 (8th Cir. 1999).  We review the district court's grant of the motion to dismiss de novo.  Id.

A discharge in bankruptcy "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived."  11 U.S.C. § 524(a)(2).  Thus, after a debtor receives a discharge, a creditor cannot seek to recover a discharged debt from the debtor.  Further, any postpetition agreement, "the consideration for which, in whole or in part, is based on a debt that is dischargeable," is enforceable only if the agreement complies with the strict requirements of the Bankruptcy Code.  § 524(c). An agreement that complies with § 524(c), called a reaffirmation agreement, must conspicuously inform the debtor of certain rights the debtor has and must be filed with the bankruptcy court.  Id.  Notwithstanding the absence of a valid reaffirmation agreement, "[n]othing contained in subsection (c) . . . of this section [524] prevents a debtor from voluntarily repaying any debt." § 524(f).

The DuBoises argue that Ford Credit violated the discharge injunction and reaffirmation requirements when it required them to roll the excess usage charges from the first lease into the second lease.  The district court found from the facts alleged in the complaint that the DuBoises voluntarily made the payments under the first lease after they received their discharge, up until the time they entered the second lease.  The DuBoises do not appeal that finding.  They also do not dispute that they retained possession of the first leased vehicle throughout that time.  The issue in this appeal is whether the agreement to roll the excess usage fees incurred during their use of the first leased vehicle into the second lease was also voluntary, as the district court found.

Section 524(f) was added to the Bankruptcy Code in 1984 with little or no discussion in the legislative history. In his treatise on bankruptcy, the only thing that Collier had to say about the addition of § 524(f) was that § 524(f) "'states the obvious' but [he] d[id] not go on to explain what the obvious [wa]s." Van Meter v. Am. State Bank, 89 B.R. 32, 34 (W.D. Ark. 1988) (quoting 3 Collier on Bankruptcy ¶ 524.04, at 524 (15th ed. 1988)). Other courts that have discussed the issue acknowledge that "the voluntariness of [a] payment is destroyed where the payment is 'the result of pressure or other inducement by sophisticated creditors.'" In re Arnold, 206 B.R. 560, 566 (Bankr. N.D. Ala. 1997) (quoting Hudson v. Central Bank (In re Hudson), 168 B.R. 368, 371 (Bankr. S.D. Ill. 1994)). Bankruptcy courts have "defined voluntary as used in § 524(f) 'in an objective sense as referring to repayment that is free from creditor influence or inducement, regardless of whether the debtor was motivated by forces unrelated to the creditor.'" Id. (quoting In re Hudson, 168 B.R. at 370).

We agree with the district court that the DuBoises voluntarily agreed to pay the excess mileage and wear and tear fees when they entered into the second lease. Importantly, the DuBoises initiated contact with Ford Credit to obtain the second lease. In the DuBoises' resistance to Ford Credit's motion to dismiss, they stated that they went to a Ford dealer to get a new car, selected the car they wanted, and initiated negotiations for the second lease. (Appellants' App. at 46.) There is nothing in the complaint to indicate that the DuBoises were coerced or otherwise induced by Ford Credit to pay the excess usage charges and enter into the second lease.[4] They do not allege that Ford Credit threatened collection efforts to recover the excess usage fees or otherwise attempted to collect the fees. The excess usage fees only became an

---

[4]On appeal, the DuBoises allege that Ford Credit refused to accept return of the first vehicle unless the DuBoises agreed to pay the charges or lease a second vehicle and roll the charges into the second lease. We reject these factual allegations as inconsistent with the DuBoises' complaint and filings with the district court. There is no allegation that the DuBoises were prevented from leaving the first vehicle with the Ford dealer, walking away, and doing business elsewhere.

issue during the negotiations for the second vehicle, which negotiations the DuBoises initiated. The DuBoises allege only that Ford Credit would not lease a second vehicle to them unless the DuBoises paid the excess usage fees incurred from use of the first leased vehicle. Ford Credit was under no obligation to enter into another financing agreement with the DuBoises following their bankruptcy discharge. Cf. 11 U.S.C. § 525(a), (c) (limiting antidiscrimination provisions based on discharged status of debtor to governmental entities or others dealing with guaranteed student loans). Ford Credit's requirement that the DuBoises pay fees stemming from their postdischarge use of the first vehicle before Ford Credit would agree to finance the second vehicle, without more, simply was not coercive.

Ford Credit undisputably could have repossessed the first vehicle if the DuBoises ceased making voluntary payments. The DuBoises continued making payments to keep the first vehicle. In fact, it was the DuBoises who first indicated on their Schedule G that they intended to keep the vehicle and continue making the lease payments. In the same vein, they voluntarily agreed to pay the excess charges from use of the first vehicle as a condition of obtaining the second lease. We see no factual distinction between the voluntariness of the postdischarge monthly payments the DuBoises made to keep the first vehicle and the voluntariness of their agreement to pay the excess usage fees they incurred related to the first lease as a condition of receiving a new lease on a second vehicle. Both are payments for the use of the first vehicle. The DuBoises do not allege that they had no other choice but to enter the new lease or that they could not receive financing elsewhere for another vehicle. Cf. In re Arnold, 206 B.R. at 567 (holding that credit union's requirement that debtor include discharged debt in refinance of wife's nondischarged debt was induced by creditor and therefore not voluntary under § 524(f) where debtor and his wife were desperate and credit union had them "over a barrel"). To the extent that the DuBoises believed that they were legally obligated to pay the excess usage fees from the first lease, the complaint fails to allege that the belief derived from Ford Credit. See In re Hudson, 168 B.R. at 373 (holding that payments made by debtors under mistaken

6

belief that they were legally obligated to do so were voluntary, where belief was not created by creditor; although creditor continued to accept payments, creditor had no obligation to inform debtor that debt had been discharged). Although we must construe the facts alleged in the complaint in the DuBoises' favor, we are not required to read in missing facts necessary to perfect their claim. Based on the facts as alleged in the complaint, we hold that the DuBoises failed to state a claim for a violation of § 524 of the Bankruptcy Code.[5]

Finally, because the DuBoises voluntarily entered the second lease and voluntarily agreed to pay the excess fees associated with the first vehicle, Ford Credit did not violate the FDCPA. See 15 U.S.C. § 1692f(1) (1994). Thus, the district court correctly dismissed the FDCPA claim.

III.

Accordingly, we affirm the district court's dismissal of the DuBoises' claims.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[5]Because we hold that there was no § 524 violation, since the DuBoises voluntarily agreed to pay the excess mileage and wear and tear charges, we decline to enter the current debate about whether § 524 affords a debtor a private cause of action. Compare Pertuso v. Ford Motor Credit Co., 233 F.3d 417, 422-23 (6th Cir. 2000) (holding no private cause of action under either § 524 or § 105 for violation of § 524), with Bessette v. Avco Fin. Servs., Inc., 230 F.3d 439, 444 (1st Cir. 2000) (holding discharge injunction under § 524 is enforceable by way of § 105, without addressing availability of implied right of action directly under § 524), cert. denied, 121 S. Ct. 2016 (2001).