*By order of the Bankruptcy Appellate Panel, the precedential effect
of this decision is limited to the case and parties pursuant to 6th
Cir. BAP LBR 8013-1(b). See also 6th Cir. BAP LBR 8010-1(c).*

**File Name:  12b0001n.06**

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| In re:   TAMMY S. MARTIN, | ) | |
| | ) | |
| Debtor. | ) | No. 11-8052 |
| _____ | ) | |

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio, Eastern Division at Cleveland.
No. 09-13675.

Decided and Filed:  March 7, 2012

Before:  EMERSON, FULTON, and PRESTON, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ON BRIEF:**  Daniel D. Wilt, Willoughby Hills, Ohio, for Appellant.  Shorain L. McGhee, Anthony
J. Amato, Parma Heights, Ohio, for Appellee.

_____

**OPINION**
_____

THOMAS H. FULTON, Bankruptcy Appellate Panel Judge.  The appellant in this case, John
Hayes, appeals a July 18, 2011 bankruptcy court order imposing sanctions against him in the amount
$4,045.00 for violating the debtor's discharge injunction.  The sanctions are based on a March 16,
2011 memorandum opinion and order in which the bankruptcy court concluded that Hayes had

violated the discharge injunction by filing a state court lawsuit against the debtor to collect a discharged debt. For the reasons that follow, we affirm the order of the bankruptcy court.

## I.  ISSUES ON APPEAL

The issues presented by this appeal are whether the bankruptcy court erred in (1) finding John Hayes in contempt of the discharge injunction and (2) awarding the debtor $4,045.00 in damages for said violation. Implicit in both of these issues is the determination of whether the bankruptcy court erred in concluding that (1) the debtor had not reaffirmed the debt and (2) the parties had not entered into a new, post-petition contract for payment of the debt.

## II.  JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Northern District of Ohio has authorized appeals to the Panel and no party has timely elected to have this appeal heard by the district court. 28 U.S.C. § 158(b)(6), (c)(1). A final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). For purposes of appeal, a final order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted).

Although the bankruptcy court in this case originally found John Hayes in contempt on March 16, 2011, that order was not final until the sanctions were imposed on July 18, 2011. *Wicheff v. Baumgart* (*In re Wicheff*), 215 B.R. 839, 843 (B.A.P. 6th Cir.1998) (citing *U.S. Abatement Corp. v. Mobil Exploration & Producing U.S., Inc.* (*In re U.S. Abatement Corp.*), 39 F.3d 563, 567 (5th Cir. 1994). Consequently, the July 18, 2011 order imposing sanctions against John Hayes completely resolved the contempt issues between the parties and made the order of contempt, as well as the imposition of sanctions, final and appealable. *U.S. Abatement Corp.*, 39 F.3d at 567; *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.* (*In re Integrated Res., Inc.*), 3 F.3d 49, 53 (2nd Cir. 1993). The notice of appeal filed by John Hayes on July 26, 2011 was, therefore, timely.

A bankruptcy court's finding of contempt and imposition of sanctions are reviewed for an abuse of discretion. *Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 550 (6th Cir. 2006);

*Badovick v. Greenspan* (*In re Greenspan*), No. 10-8019, 2011 WL 310703, *1 (B.A.P. 6th Cir. Feb. 2, 2011) (unpublished table decision) (bankruptcy court's imposition of sanctions for violation of § 524 injunction reviewed for an abuse of discretion). "An abuse of discretion occurs only when the [trial] court relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *Kaye v. Agripool, SRL* (*In re Murray, Inc.*)*,* 392 B.R. 288 (B.A.P. 6th Cir. 2008); *See also Mayor of Balt., Md. v. W. Va. (In re Eagle-Picher Indus., Inc.)*, 285 F.3d 522, 529 (6th Cir. 2002) ("An abuse of discretion is defined as a 'definite and firm conviction that the [court below] committed a clear error of judgment.'") (internal citation omitted). "The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *Barlow v. M.J. Waterman & Assocs. Inc.* (*In re M.J. Waterman & Assocs., Inc.*), 227 F.3d 604, 608 (6th Cir. 2000).

A bankruptcy court's application and interpretation of 11 U.S.C. § 524 poses a mixed question of law and fact. *Ford Motor Credit Co., LLC v. Morton* (*In re Morton*), 410 B.R. 556, 559 (B.A.P. 6th Cir. 2009). The court's interpretation of § 524 is reviewed *de novo*. *Id*. "Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *Menninger v. Accredited Home Lenders* (*In re Morgeson*), 371 B.R. 798, 800 (B.A.P. 6th Cir. 2007). The court's determination that the parties did not enter into an enforceable reaffirmation agreement or a new post-petition contract is a question of fact which is reviewed for an abuse of discretion. *Rajotte v. Carter* (*In re Rajotte*), 81 Fed. App'x 29, 32 (6th Cir. 2003).

## III.   FACTS

In December 2006, Tammy Martin ("Debtor") and John Hayes ("Appellant") entered into an agreement whereby Debtor agreed to purchase a business called "The Sea Level Lounge" ("Lounge") in Cleveland, Ohio, from Appellant's corporation, Eagle Bar, Inc. The purchase price of $210,000 included the building, real estate, equipment, inventory and liquor license. Debtor paid $30,000 of the purchase price as a down payment and agreed to pay Appellant the remaining balance in monthly installments of $1,700.00. Debtor signed a promissory note and executed a mortgage granting Eagle Bar, Inc., a lien on the real estate.

In January 2009, Debtor began having financial difficulties and offered to give the Lounge back to Appellant. Appellant did not want the business back and instead offered to lower the monthly payment to $800.00. Debtor agreed.

Debtor filed a chapter 7 petition for bankruptcy relief on April 29, 2009. She listed Appellant among her creditors for the debt on the Lounge. After filing bankruptcy, Debtor again expressed her desire to give the Lounge back to Appellant. Appellant refused to take the property back. The parties did not enter into a reaffirmation agreement for the Lounge. Debtor did, however, continue to make post-petition payments to Appellant. Debtor voluntarily paid Appellant $800 in June, July, August, September, October, November and December 2009 and in January, March and April 2010. Debtor received her chapter 7 discharge on August 10, 2009.

On September 30, 2010, Appellant sued Debtor in the Court of Common Pleas of Cuyahoga County, Ohio, for the outstanding balance of the debt on the Lounge. In his state court complaint, Appellant alleged that Debtor had voluntarily entered into an oral agreement with him in June 2009 to continue paying for the Lounge. Appellant asserted this new agreement was "supported by consideration and is independent and apart from the old agreement" which was discharged in bankruptcy. ("Debtor's Mot. To Show Cause" at 3-4, Bankr. Case No. 09-13675, ECF No. 30). Appellant also alleged that Debtor had voluntarily advised Appellant that she did not intend to discharge her liability on the Lounge debt.

On November 3, 2010, Debtor filed a motion to reopen her chapter 7 case for the purpose of enforcing her chapter 7 discharge against Appellant. The court granted her motion and the case was reopened on December 8, 2010. Thereafter, Debtor filed a motion seeking an order requiring Appellant to show cause why he should not be held in contempt for filing the state court lawsuit. Debtor denied Appellant's allegation that she intended not to discharge the obligation for the Lounge. She also denied that she had entered into a new agreement with him to repay the debt.

Appellant filed a response to Debtor's motion to show cause on January 20, 2011, in which he reiterated the arguments from his state court complaint that Debtor had entered into a new agreement post-petition to continue paying for the Lounge and that she had expressed an intent not to discharge the debt thereon. In support of his "new agreement" argument, Appellant stated that a discharge entered under 11 U.S.C. § 524 does not prohibit a creditor from "instituting proceedings

to collect on a debt" if a debtor makes a post-petition agreement to repay a pre-petition debt. ("Br. In Opposition to Debtor's Second Mot. To Show Cause" at 5, Bankr. Case No. 09-13675, ECF No. 33).

The bankruptcy court granted Debtor's motion for an order to show cause on January 27, 2011, and ordered Appellant to appear and show cause on March 11, 2011, why he should not be held in contempt for violating the discharge injunction.

At the show cause hearing, Appellant reiterated his arguments that Debtor told him she did not intend to discharge the debt and that she had orally agreed to enter into a new contract on the Lounge. (March 11, 2011 Tr. of Hr'g at 32, Bankr. Case No. 09-13675, ECF No. 64). Appellant asserted that the monthly checks satisfied the Statute of Frauds and that these checks were adequate consideration for the new agreement. The Appellant also alleged that these payments indicated an assent on Debtor's part to make the new agreement to pay for the Lounge. "It shows that Ms. Martin knew of the oral understanding, agreed to the oral understanding and paid for the oral understanding." (March 11, 2011 Tr. of Hr'g at 51, Bankr. Case No. 09-13675, ECF No. 64). Appellant went on to assert that pursuant to 11 U.S.C. § 524(f), Debtor's voluntary post-petition payments obligated her to continue making the payments until the debt was paid in full.

On March 16, 2011, the bankruptcy court issued a memorandum opinion and order in which it concluded that (1) the parties had not entered into a reaffirmation agreement during the pendency of Debtor's case; (2) Debtor's voluntary post-petition payments did not obligate her to continue making the payments to Appellant; (3) the parties did not enter into a new contract for payment of the debt because mutual assent and consideration independent of the discharged debt were both lacking; (4) Appellant willfully violated the discharge injunction when he filed the state court lawsuit and was, therefore, in contempt; and (5) Debtor was entitled to an award of actual damages for the violation. The bankruptcy court determined that Appellant's contempt was "appropriately resolved by an award of damages for the debtor's lost wages and attorney fees." The court ordered Debtor to file a detailed fee statement for her attorney's fees and an affidavit regarding her lost wages by March 31, 2011.[1]

---

[1]Appellant appealed the March 16, 2011, memorandum opinion and order to the BAP on March 29, 2011, case number 11-8020; however, based on the interlocutory nature of that appeal,

Debtor's affidavit of lost wages asserted that Debtor took time off on March 10, 2011, to prepare for the show cause hearing and on March 11, 2011 to attend the hearing. She alleged that her lost wages for this time were $245.00. Debtor's Attorney Fee Statement showed Debtor incurred $3,800 in attorney's fees between October 19, 2010, and March 29, 2011. According to the billing statement, Debtor's attorney, Shorain L. McGhee, and her associate, Anthony Amato, spent 19 hours on the contempt issue at the rate of $200.00 per hour. The time spent on the matter included reviewing and defending the state court proceeding, preparing and filing the motion to reopen Debtor's case, preparing and prosecuting the motion to show cause, preparing for and appearing at the show cause hearing, and reviewing the notice of appeal that Appellant filed on March 29, 2011.[2]

Appellant filed an objection to the bankruptcy court's award of damages on April 8, 2011, in which he alleged that (1) the award of attorney's fees was not equitable and (2) the fees requested by Debtor's attorney were excessive. In making his first argument, Appellant repeated his earlier assertion that he did not blindly ignore the discharge injunction when he filed the state court lawsuit. Instead, he alleged that he had relied on case law that "suggests a debtor can enter into a post filing and post discharge new agreement to pay the debt even though the debt could be discharged." ("Obj. to Award of Attorney Fees and Damages" at 2, Bankr. Case No. 09-13675, ECF No. 66).

Appellant's sole objection to Debtor's request for attorney's fees as damages was that the charges for March 10, 2011, included a charge for both Shorain McGhee and her associate, Anthony Amato. An examination of the time sheet makes clear that on March 10, 2011, Debtor met with both Shorain McGhee and Anthony Amato in preparation for the March 11, 2011 hearing on her show cause motion. McGhee and Amato each billed Debtor $200 for that hour which resulted in a $400 charge for that one meeting.[3]

---

Appellant voluntarily dismissed this appeal on June 28, 2011.

[2]See note 1 supra.

[3]In his objection, Appellant also alleged that Debtor had not proven that she lost $245 in wages; however, Appellant and Debtor stipulated to the $245 in lost wages on July 15, 2011.

On July 18, 2011, the bankruptcy court issued an order awarding Debtor $3,800.00 in attorney's fees and $245.00 in lost wages as a sanction against Appellant for his violation of the discharge injunction. Appellant's timely appeal followed.

## IV. DISCUSSION

Section 524(a)(2) of the Bankruptcy Code provides that a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any . . . debt [discharged under section 727 . . . of this title] as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2). This subsection, along with § 524(a)(3), is commonly referred to as the "discharge injunction." As the Ninth Circuit recognized,

> the discharge injunction [comes] into force by operation of law upon entry of the discharge. A discharge injunction . . . is . . . an equitable remedy precluding the creditor, on pain of contempt, from taking *any* actions to enforce the discharged debt.

*Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d 1193, 1200 (9th Cir. 2008), *aff'd*, 130 S. Ct. 1367 (2010) (internal citations omitted). Once a discharge is issued, § 524(a)(2) and (3) makes permanent the protections afforded by § 362's automatic stay and prohibits a creditor from pursuing collection efforts against the debtor personally for debts that were discharged in the bankruptcy proceeding. *Gunter v. O'Brien & Assocs. Co., LPA* (*In re Gunter*), 389 B.R. 67, 71 (Bankr. S.D. Ohio 2008). "The purpose of § 524(a) is to afford a debtor a 'fresh start' by ensuring that a debtor will not be pressured in any way to repay a debt after it has been discharged." *Paglia v. Sky Bank* (*In re Paglia*), 302 B.R. 162, 166 (Bankr. W.D. Pa. 2003).

Unlike § 362 which specifically provides for the recovery of damages when the automatic stay is violated, § 524 does not set forth a remedy for violations of the discharge injunction. However, because

> [s]ection 524(a)(2) not only prohibits but also enjoins [law]suits, as well as other collection actions, . . . the creditor who attempts to collect a discharged debt is violating not only a statute but also an injunction and is therefore in contempt of the bankruptcy court that issued the order of discharge.

*Cox v. Zale Del., Inc.*, 239 F.3d 910, 915 (7th Cir. 2001) (citing *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 421 (6th Cir. 2000) (recognizing that no private right of action exists for violations of § 524(a), but that "the traditional remedy for violation of [the discharge] injunction lies in contempt proceedings . . . .")). Pursuant to 11 U.S.C. § 105(a), a bankruptcy court has the power to issue civil contempt orders when a creditor has violated one of Bankruptcy Code's substantive provisions. *McClatchey v. Parsons* (*In re Lazy Acres Farm, Inc.*), 134 F.3d 371 (6th Cir. 1997) (unpublished table decision). The purpose of civil contempt is "to compel or coerce obedience to a court order or to compensate a party for another's noncompliance with a court order." *In re Moohaven Dairy LLC*, 461 B.R. 22, 27 (Bankr. E.D. Mich. 2011).

A court may remedy a violation of § 524(a)(2) by awarding damages to the injured debtor pursuant to 11 U.S.C. § 105(a). *Paul v. Iglehart* (*In re Paul*), 534 F.3d 1303, 1306 (10th Cir. 2008); *Gunter*, 389 B.R. at 72. In order to recover damages, a debtor must suffer an actual injury. *Id.*(concluding that bankruptcy court "cannot award damages for violations of the discharge injunction that are technical or inadvertent and do not rise to the level of contempt."). A debtor must prove his injury by a preponderance of the evidence. *McCool v. Beneficial* (*In re McCool*), 446 B.R. 819, 823-24 (Bankr. N.D. Ohio 2010). "[A] debtor cannot rely on 'undue conjecture' or speculation, but instead must support its claim of actual injury with 'adequate proof.'" *McCool*, 446 B.R. at 824 (citing *Archer v. Macomb Cnty. Bank*, 853 F.2d 497, 499-500 (6th Cir. 1988)). In addition to an award of actual damages, a debtor may also be entitled to an award of attorney fees "where necessary to effectuate the purposes of the discharge injunction . . . ." *Miles v. Clarke* (*In re Miles*), 357 B.R. 446, 450 (Bankr. W.D. Ky. 2006).

In order to sanction a party for violating § 524(a), a court must determine that the creditor's actions were willful, "i.e., whether the creditor deliberately acted with [actual] knowledge of the bankruptcy case." *In re Waldo*, 417 B.R. 854, 891 (Bankr. E.D. Tenn. 2009); *Gunter*, 389 B.R. at 72. "[A] willful violation [of § 524(a)] does not require any specific intent. Rather, the question is simply whether, having knowledge of the . . . discharge injunction, the creditor's actions were intentional." *McCool*, 446 B.R. at 823(citations omitted). A creditor's mistaken belief that its actions were lawful or did not violate § 524(a) is not a defense to a contempt action. *Id.* ("[A] willful violation of the . . . discharge injunction may still exist even though the creditor believed in good faith that its actions were lawful."); *Waldo*, 417 B.R. at 892. As the party seeking relief, the debtor

has the burden of proving that the creditor willfully violated the discharge injunction by clear and convincing evidence. *Glover v. Johnson*, 138 F.3d 229, 244 (6th Cir. 1998).

Although the discharge injunction is powerful, there are limitations to its reach. First, a debtor may voluntarily decide to reaffirm an otherwise dischargeable debt by executing a reaffirmation agreement pursuant to 11 U.S.C. § 524(c). "A reaffirmation agreement is a voluntary postpetition agreement between a debtor and a creditor which involves the retention of prepetition debt after the debtor's discharge." *Miller v. Miller* (*In re Miller*), 246 B.R. 559, 561 (Bankr. E.D. Tenn. 2000). To be valid, such agreements must be enforceable under nonbankruptcy law and must comply with the various requirements found in § 524(c), (d), and (k). These requirements are designed "to protect debtors from compromising their fresh start by making unwise agreements to repay dischargeable debts." *In re Bowling*, 116 B.R. 659, 664 (Bankr. S.D. Ind. 1990). If the agreement does not meet the requirements of subsection (c), it is unenforceable and the discharge injunction prohibits a creditor from taking any action to collect on the debt. *Renwick v. Bennett* (*In re Bennett*), 298 F.3d 1059, 1067 (9th Cir. 2002). For purposes of this appeal, the relevant requirements are that the reaffirmation agreement be in writing and be filed with the court. 11 U.S.C. § 524(c)(3). Debtor and Appellant both testified at the hearing in the bankruptcy court that they had not executed or filed a reaffirmation agreement with the bankruptcy court. As a result, § 524(c) has no applicability to this case. A statement by the Debtor that she did not intend to discharge the obligation on the Lounge is not an exception to the mandates of § 524(c).

The second exception to § 524(a)(2)'s reach is codified in § 524(f), which provides that "[n]othing . . . prevents a debtor from voluntarily repaying any [discharged] debt." A creditor who accepts payments made pursuant to this section does not violate the discharge injunction so long as the payments are truly voluntary. *In re Journal Register Co.*, 407 B.R. 520, 533 (Bankr. S.D.N.Y. 2009). As used in § 524(f), "voluntary" is defined "in an objective sense as referring to repayment that is free from creditor influence or inducement, regardless of whether the debtor was motivated by forces unrelated to the creditor." *DuBois v. Ford Motor Credit Co.*, 276 F.3d 1019, 1023 (8th Cir. 2002) (internal quotation marks and citations omitted).

Although a debtor is permitted to make voluntary payments pursuant to § 524(f), courts are in unanimous agreement that doing so does not revive the debt or obligate the debtor to continue

making the payments. *Van Meter v. Am. State Bank,* 89 B.R. 32, 34 (W.D. Ark. 1988). Voluntary payments made under § 524(f) also do not empower the creditor to enforce the claim against the debtor. *Id.* ("[P]rovisions of § 524(f) do not validate repayments of discharged debts that are in any manner induced by the acts of the creditor."); *In re Payton*, 338 B.R. 899, 905 (Bankr. D.N.M. 2006); *Beck v. Gold Key Lease, Inc.* (*In re Beck*), 272 B.R. 112, 121 (Bankr. E.D. Pa. 2002) (concluding that payments under 524(f) do not obligate the debtor to perform absent a reaffirmation agreement); *Mickens v. Waynesboro Dupont Emps. Credit Union, Inc.* (*In re Mickens*), 229 B.R. 114, 118 (Bankr. W.D. Va. 1999) (noting that by its very nature, the term "voluntary" indicates that it does not create an obligation); *In re Latanowich*, 207 B.R. 326, 336 (Bankr. D. Mass. 1997); *In re Armstead*, No. 96-10592DWS, 1997 WL 860677, *3 (Bankr. E.D. Pa. Nov. 7, 1997) ("However, as the creditor cannot utilize legal action to collect a non-affirmed debt, the debtor may cease such payments at any time without penalty."); *Hudson v. Central Bank* (*In re Hudson*), 168 B.R. 368, 371 (Bankr. S.D. Ill. 1994) ("[D]ebtors may repay debts as they choose without being legally obligated in the event they later become unable to fulfill their intention."); *In re Brinkman*, 123 B.R. 611, 612 (Bankr. N.D. Ind. 1991) ("As a result, a debtors' agreement to repay a pre-petition debt is not enforceable unless that agreement was entered into before the discharge was granted. This does not, however, prevent a debtor from voluntarily repaying a discharged debt. 11 U.S.C. § 524(f). It merely means that a debtor may not be compelled to do so."); *Bowling,* 116 B.R. at 664 ("No transaction that leaves a debtor obligated to pay, or believing that he or she is obligated to pay any part of a discharged debt can be characterized as voluntary repayment within the meaning of section 524(f)."). A debtor who wishes to make voluntary payments pursuant to § 524(f) may stop making the payments at any time because the debt was discharged. *Francis v. Nat'l Revenue Serv., Inc.* (*In re Francis*), 426 B.R. 398, 404 (Bankr. S.D. Fla. 2010); *In re Grabinski*, 150 B.R. 427, 431 (Bankr. N.D. Ill. 1993).

The discharge injunction only applies to debts that were discharged by the bankruptcy proceeding. Section 727(b) provides that "[e]xcept as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief . . . ." 11 U.S.C. § 727(b). Accordingly, any debt that arises after the debtor files for bankruptcy relief is not affected by the chapter 7 discharge and the discharge

injunction does not prohibit a creditor from enforcing said debt. Thus, post-petition agreements can create an enforceable obligation. *Rajotte*, 81 Fed. App'x at 34.[4]

As the bankruptcy court in this appeal recognized, to create an enforceable, post-petition agreement, the parties must prove the essential elements of a contract: "offer, acceptance, contractual capacity, consideration . . ., a manifestation of mutual assent and legality of object and of consideration. A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." *Minster Farmers Coop. Exch. Co., Inc. v. Meyer*, 884 N.E.2d 1056, 1061 (Ohio 2008) (internal citations omitted). If the contract involves an interest in real estate, Ohio's Statute of Frauds provides that "[n]o action shall be brought . . . unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith . . . ." Ohio Rev. Code § 1335.05. According to the Ohio Supreme Court,

> [t]he memorandum in writing which is required by the statute of frauds (section 4199, Rev. St.) is a memorandum of the agreement between parties, and it is not sufficient unless it contains the essential terms of the agreement, expressed with such clearness and certainty that they may be understood from the memorandum itself, or some other writing to which it refers, without the necessity of resorting to parol proof.

*Kling v. Bordner*, 61 N.E. 148 (Ohio 1901). Importantly, the memorandum must make clear that the parties are *agreeing* to all of the essential terms. *Landskroner v. Landskroner*, 797 N.E.2d 1002, 1012 (Ohio Ct. App. 2003); *Kiser v. Williams*, No. 24968, 2010 WL 2837198, *3 (Ohio Ct. App. July 21, 2010) (finding that payments made by check with notations that the payments were for payment on a piece of property or for a loan did not satisfy Ohio's statute of frauds because they did not establish the essential terms of the loan). Unless a party is able to prove that contract is enforceable under state law, the post-discharge agreement is nothing more than an unenforceable reaffirmation agreement. *Francis*, 426 B.R. at 404.

In the bankruptcy arena, an agreement to repay an otherwise dischargeable debt that does not comply with the requirements of § 524(c) must be supported by "consideration entirely independent

---

[4]*But see Smith v. First Suburban Nat'l Bank* (*In re Smith*), 224 B.R. 388, 397 (Bankr. N.D. Ill. 1998) (concluding "that any post-petition agreement which obligates a debtor on a discharged debt must comply with the relevant Code sections dealing with reaffirmation. Failure to do so will result in the agreement being considered invalid and collection upon that agreement a violation of the discharge injunction.")

of the discharged . . . debt." *Rajotte*, 81 Fed. App'x at 32. Executing a new promissory note to repay a debt that was discharged in order to avoid a foreclosure on debtor's home is new consideration that supports a finding of a valid post-discharge agreement. *Minster State Bank v. Heirholzer* (*In re Heirholzer*), 170 B.R. 938, 941 (Bankr. N.D. Ohio 1994). Signing a promissory note in exchange for the substitution "of a civil enforcement mechanism for the criminal process" also qualifies as new consideration. *Button v. Sheridan Oil Co., Inc.* (*In re Button*), 18 B.R. 171, 172 (Bankr. W.D.N.Y. 1982). Unless the new agreement is supported by adequate consideration, it is unenforceable regardless of whether the agreement satisfies the other requirements for contracts. *Rajotte*, 81 Fed. App'x at 32.

Turning to the case currently on appeal, the Panel must preliminarily determine whether the bankruptcy court abused its discretion in determining that the debtor did not reaffirm the debt or that the parties had not entered into a binding post-discharge agreement to continue making payments for the Lounge. If there was a valid reaffirmation agreement or a valid post-discharge agreement, then the Appellant could not have violated the discharge injunction. If, however, the bankruptcy court was correct in concluding that neither of those conditions existed, then the Panel must analyze whether the bankruptcy court's determination that the Appellant was in contempt was correct.

In this case it is clear that the parties did not enter into any type of reaffirmation agreement that would be enforceable under the Bankruptcy Code. The parties did not execute a reaffirmation agreement nor did they file anything with the bankruptcy court. Accordingly, they did not comply with any of the provisions of § 524(c). Debtor's personal liability owing to Appellant under the December 2006 promissory note was discharged in Debtor's chapter 7 case.

The bankruptcy court was also correct in concluding that Debtor's voluntary post-petition payments did not obligate her to continue making payments under the note. Although she was free to make those $800 monthly payments voluntarily under § 524(f), caselaw makes clear that doing so did not obligate her to continue making those payments nor did it entitle Appellant to enforce the discharged obligation. Debtor had complete freedom to stop making those payments at any time.

Lastly, the bankruptcy court was correct in determining that the parties did not enter into a new, post-discharge contract. There was no new consideration given in exchange for renewal of the agreement. Although Appellant alleges in his brief that he agreed not to file a motion for relief from stay during the pendency of Debtor's case and agreed not to file a foreclosure action after Debtor

received her discharge, there is nothing in the record which validates these assertions. In fact, based on Debtor's numerous attempts to relinquish possession of the Lounge back to Appellant, it seems clear that Debtor would have consented to Appellant filing either action. The record also clearly demonstrates that Debtor never intended to have a continuing obligation to Appellant. (March 11, 2011 Tr. of Hr'g at 10, Bankr. Case No. 09-13675, ECF No. 64). The essential element of mutual assent, therefore, was lacking.

Additionally, Appellant's allegations that the parties made an oral agreement whereby Debtor would continue paying for the Lounge does not satisfy Ohio's Statute of Frauds requirements. There was nothing in writing that would qualify as a memorandum sufficient to establish the existence of an agreement as to the real estate. And, as is clear from the Court of Appeals of Ohio's holding in *Kiser v. Williams*, 2010 WL 2837198, *3 (Ohio Ct. App. July 21, 2010), Debtor's checks alone do not qualify as a memorandum because the checks did not contain the essential elements of the contract nor did they refer to any other document that contained the essential elements of a new agreement.[5]

Having determined that Appellant's actions were not excepted from the reach of the discharge injunction, the Panel must now decide if the bankruptcy court abused its discretion in concluding that Appellant was in contempt and subject to sanctions for his actions. Section 524(a)(2) specifically enjoins a creditor from filing a lawsuit to collect a discharged debt as a personal liability of the debtor. If the debtor establishes by clear and convincing evidence that a creditor knew that the discharge injunction prohibited his actions and intentionally committed the

---

[5]In his brief, Appellant also argues that Debtor's tender of the $800 checks qualified as part performance such that the agreement was removed from the statute of frauds. In Ohio, "[a]n agreement is removable from operation of the Statutes of Frauds by virtue of partial performance only where the party relying on the agreement changes his position to his detriment thereby making it impractical or impossible to return the parties to their original status." *Saydell v. Geppetto's Pizza & Ribs Franchise Sys., Inc.*, 652 N.E.2d 218, 224 (Ohio Ct. App. 1994). Appellant alleges that he relied on Debtor's assertions that she did not intend to discharge the obligation on the Lounge and did not, therefore, file a motion for relief from the automatic stay. This is insufficient to remove the agreement at issue in this case from the statute of frauds. "[The] party seeking to establish part performance must demonstrate that he has performed acts in exclusive reliance on the oral contract, and that such acts have changed his position to his prejudice." *Cunningham v. Miller*, 2010 WL 2245611, *5 (Ohio Ct. App. June 4, 2010). In this case, Appellant has not demonstrated that his position has changed at all, let alone to his detriment. He has the same right to proceed against the property as he did prior to the filing of the case.

acts which violated the injunction, then a court must find the creditor in contempt. A creditor's mistaken belief as to the validity of its actions is not a defense to violating the discharge injunction.

It is clear in this case that Appellant knew that the discharge injunction prohibited his actions to sue Debtor for $182,851.54. He alleged in his state court complaint that although Debtor had filed bankruptcy, he was entitled to enforce the obligation against her personally because Debtor had voluntarily agreed to enter into a new contract with him, had made voluntary payments under § 524(f) and had advised him of her desire not to discharge her debt on the Lounge. It is abundantly clear from these statements that Appellant was fully aware of the fact that Debtor had received a chapter 7 discharge. It is also apparent from the state court complaint that Appellant was aware of the proscriptions of the discharge injunction. His mistaken belief that his actions were somehow outside the scope of § 524(a)(2) does not remedy this fact. Accordingly, the bankruptcy court did not abuse its discretion in finding Appellant in contempt of § 524(a)(2).

Having found Appellant in contempt, the bankruptcy court had the discretion to award damages to Debtor for any actual injury she suffered. Debtor submitted bills from her attorney showing she incurred $3,800 in attorneys fees between October 19, 2010, and March 29, 2011, as well as a stipulation that her lost wages for March 10 and 11, 2011, were $245. Debtor's attorney's fees were incurred in defending the state court proceeding filed by Appellant and in bringing the contempt action in the bankruptcy court. Debtor clearly suffered injuries as a result of Appellant's state court lawsuit. She had to not only take action in the state court, but also in the bankruptcy court in order to protect herself. For the number of pleadings and time spent on the matter, 19 hours appears to be a reasonable expenditure of time. Debtor proved her damages by a preponderance of the evidence and supported her claims with adequate proof. This case appears to be a classic situation in which an award of attorney's fees was "necessary to effectuate the purposes of the discharge injunction . . . ." *Miles*, 357 B.R. at 450. The bankruptcy court was well within its discretion to award Debtor her attorney's fees and lost wages for Appellant's willful violation of the § 524 discharge injunction.

## V. CONCLUSION

For the foregoing reasons, the Panel affirms the bankruptcy court's July 18, 2011 order awarding Debtor sanctions in the amount of $4,045.00 for the Appellant's willful violation of the § 524(a)(2) discharge injunction.