In re Louisa R. MILES, Debtor.

Louisa R. Miles f/k/a Louisa
R. Clarke, Plaintiff,

v.

Zebedee Thomas Clarke, Defendant.

Bankruptcy No. 05–30825.
Adversary No. 05–03190.

United States Bankruptcy Court,
W.D. Kentucky.

Oct. 27, 2006.

447

Nick L. Pearl, Radcliff, KY, for Debtor.

John M. Nader, Louisville, KY, for plaintiff.

Carol B. Meinhart, Radcliff, KY, for defendant.

## MEMORANDUM OPINION

THOMAS H. FULTON, Bankruptcy Judge.

THIS CORE PROCEEDING[1] comes before the Court on the complaint of Louisa R. Miles ("Plaintiff"), the above-named Chapter 7 debtor, seeking a finding of contempt by Zebedee Thomas Clarke ("Defendant") for allegedly violating the discharge injunction, under 11 U.S.C. § 524(a)(2), by attempting to collect a prepetition debt that was discharged in Plaintiff's Chapter 7 bankruptcy case, and for recovery of compensatory and punitive damages, including attorney fees. This Court held an evidentiary hearing on the matter on September 6, 2006. At the conclusion of the evidentiary hearing, Plaintiff's counsel moved for an award of attorney fees.

---

1. *See* 28 U.S.C. § 157(b)(1)-(2).

After hearing arguments by both parties and considering all exhibits and submissions, this Court finds that Defendant took action to collect a discharged debt in violation of the discharge injunction under 11 U.S.C. § 524(a)(2) and awards Plaintiff damages in the amount of $903.20. The motion by Plaintiff's counsel for an award of attorney fees is denied.

## FACTS

Plaintiff and Defendant were married on September 16, 1994. On July 19, 2004, the two separated and agreed to file for divorce in Hardin County, Kentucky. A property settlement and custody agreement were entered into by both parties and was approved and adopted by the Hardin Family Court in a final divorce decree that was entered September 24, 2004.

Under the property settlement agreement, Plaintiff and Defendant agreed, *inter alia,* that Plaintiff would "assume responsibility and hold [Defendant] harmless for the debt owing on the 2002 Mazda, ... the debt owing on the house and lot located at 125 Whisbrook Avenue, Vine Grove, Kentucky 40175, and all debts solely in her name." In addition, the agreement stated:

> The parties acknowledge and warrant to each other that they own the house and lot located at 125 Whisbrook Avenue ... and that Wife shall have exclusive use and possession of said house and lot. [Defendant] agrees to execute and deliver to [Plaintiff] a Quit Claim Deed conveying to [Plaintiff] as and for her sole and separate property, all of his right, title and interest in and to the above named property.

At some point, Defendant delivered to Plaintiff a quit claim deed for his interest in the Whisbrook Avenue house. Despite the clear intent in the property settlement agreement that Plaintiff would "assume responsibility and hold [Defendant] harmless for" the debts on the 2002 Mazda and the Whisbrook Avenue house, Defendant's name remained on the 2002 Mazda note and the home mortgage.

Notwithstanding Plaintiff's agreement to assume responsibility for the 2002 Mazda, U.S. Bank, the holder of the note for the vehicle, repossessed and sold the 2002 Mazda around August 1, 2004, and sought payment of the deficiency from Defendant and Plaintiff.[2] Plaintiff testified that, sometime after the filing of the divorce decree and the repossession of the 2002 Mazda, she purchased two different cars.

Plaintiff filed a Chapter 7 petition on February 14, 2005. During the pendency of Plaintiff's bankruptcy, she reaffirmed her debt on the Whisbrook Avenue house and on at least one of the recently-purchased cars pursuant to 11 U.S.C. § 524(c). On her original Schedule F, Plaintiff included U.S. Bank as an unsecured creditor in the amount of $14,483.08. Although Defendant was not listed as an unsecured creditor initially, Plaintiff amended Schedule F of her bankruptcy petition on March 1, 2005, to include him as an unsecured creditor.

Defendant filed a proof of claim for $15,271.20 on grounds that he was a co-maker on the note for the Mazda and would remain solely liable for any deficien-

---

**2.** According to paragraph 5 of the Statement of Financial Affairs accompanying Plaintiff's bankruptcy petition, the 2002 Mazda was repossessed, foreclosed upon, or returned to U.S. Bank on August 1, 2004. Notably, this date is approximately one-and-a-half months *prior* to the entry of the divorce decree in the Hardin Family Court under which Plaintiff agreed to assume responsibility for and hold Defendant harmless for the debt on the Mazda.

cy if the debt owed by Plaintiff alone (pursuant to the divorce agreement) to U.S. Bank were discharged. On October 14, 2005, on objection of the Chapter 7 Trustee, Defendant's claim was disallowed by the Bankruptcy Court. The Plaintiff was a granted discharge by the Bankruptcy Court on June 6, 2005, and among the debts discharged was her debt owed to U.S. Bank for the deficiency resulting from the repossession and sale of the 2002 Mazda.

Having quitclaimed his interest in the Whisbrook Avenue house, the Defendant found himself unable to obtain financing for a new residence because he remained liable on the mortgage for the Whisbrook Avenue house. For this reason, Defendant filed a motion in the Hardin Family Court to require Plaintiff to obtain refinancing for the Whisbrook Avenue house so that Defendant would no longer be jointly liable with Plaintiff on the promissory note and mortgage—essentially seeking compliance with the parties' intent in the divorce decree. On August 23, 2005, the Hardin Family Court held a hearing on Defendant's motion. Neither Plaintiff nor counsel for Plaintiff appeared at this hearing, and on August 25, 2005, the Hardin Family Court entered an order granting the requested relief.

On September 13, 2005, after motion and a hearing, the Hardin Family Court entered an order to set aside its August 25, 2005, order requiring Plaintiff to obtain refinancing on grounds that Plaintiff had been given inadequate notice of the August 23 hearing. By order of October 11, 2005, new counsel was substituted for Plaintiff, and a continuance was granted until Octo-

ber 25, 2005, with respect to Defendant's motion to require Plaintiff to obtain refinancing. On November 1, 2005, the Hardin Family Court held a hearing on Defendant's motion seeking judgment against Plaintiff in the amount of $15,271.20 with respect to the U.S. Bank debt.[3] Sometime after the November 1, 2005, hearing, Defendant paid U.S. Bank the deficiency resulting from the repossession and sale of the 2002 Mazda.

On November 16, 2005, Plaintiff filed this adversary proceeding, seeking a finding that Defendant is in contempt of court for violating the permanent discharge injunction under 11 U.S.C. § 524(a)(2) and seeking compensatory and punitive damages. Finding that Defendant did violate 11 U.S.C. § 524's permanent injunction, this court awards damages as set forth, *infra,* in this order.

## CONCLUSIONS OF LAW

 Under 11 U.S.C. § 524(a)(2), a discharge under 11 U.S.C. § 727 "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.... " *See Tenn. Student Assistance Corp. v. Hood,* 541 U.S. 440, 444, 124 S.Ct. 1905, 1908, 158 L.Ed.2d 764 (2004); *Pertuso v. Ford Motor Credit Co.,* 233 F.3d 417, 421 (6th Cir.2000). This provision enjoins any conduct taken by a creditor with the intent to collect a discharged debt and is not limited to legal action. *See, e.g., In re Andrus,* 184 B.R. 311, 315 (Bankr.N.D.Ill.1995); *Sechuan City, Inc. v. N. Am. Motor Inns,*

---

**3.** The motion heard on November 1, 2005, also refers to a debt owed to Chase Financial in the amount of $3,526.25. This debt does not, however, appear on Plaintiff's Schedule F, and her complaint in this adversary proceeding does not establish whether this debt was discharged in her bankruptcy proceeding. Accordingly, this debt is irrelevant to the case *sub judice.*

*Inc. (In re Sechuan City)*, 96 B.R. 37, 39–40 (Bankr.E.D.Pa.1989). The permanent relief from liability for discharged debts is one of the "[c]ritical features of every bankruptcy proceeding." *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 126 S.Ct. 990, 163 L.Ed.2d 945 (2006); *see also Green v. Welsh*, 956 F.2d 30, 33 (2d Cir.1992). The discharge injunction is the means by which this relief is effected, and the traditional remedy for a violation therefor lies in contempt proceedings. *See, e.g., Pertuso*, 233 F.3d at 421; *In re Perviz*, 302 B.R. 357, 369 (Bankr.N.D.Ohio 2003).

▮ With respect to any liability of the Plaintiff on the 2002 Mazda, the Mazda debt was discharged, and the injunction protected her from any future conduct by Defendant (or anyone else) to collect on it. Accordingly, Defendant's attempts to recover or seek indemnity from Plaintiff for that debt violated the discharge injunction under 11 U.S.C. § 524(a)(2). With respect to Defendant's attempt to require Plaintiff to refinance her reaffirmed mortgage so that he was no longer liable, to reflect his having quitclaimed his interest in the Whisbrook Avenue house, his actions in the Hardin Family Court were not efforts "to collect, recover, or offset [a discharged] debt" under 11 U.S.C. § 524(a)(2). Plaintiff sought no monetary damages or indemnity. Rather, he merely sought to require Plaintiff to take whatever measures were available to change the mortgage agreement she had reaffirmed through bankruptcy so that he was no longer liable on a mortgage agreement for a home in which, pursuant to the divorce decree, he had quitclaimed his legal interest to Plaintiff. Accordingly, his actions with respect to the Whisbrook Avenue house did not violate the discharge injunction.

▮ Having found Defendant in violation of the discharge injunction, this Court turns to the proper remedy for the violation. Although the only relief expressly authorized by 11 U.S.C. § 524 is injunctive, 11 U.S.C. § 105(a) authorizes the issuance of "any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. *See, e.g., United States v. Rivera Torres (In re Rivera Torres)*, 432 F.3d 20, 27 (1st Cir.2005); *Hardy v. United States (In re Hardy)*, 97 F.3d 1384, 1389 (11th Cir.1996). "As a transgression against the court, broad discretion is invested in the court in selecting an appropriate sanction." *Chambers v. GreenPoint Credit (In re Chambers)*, 324 B.R. 326, 329 (Bankr. N.D.Ohio 2005); *see also McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 193–94, 69 S.Ct. 497, 500–01, 93 L.Ed. 599 (1949) ("The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief. They may entail the doing of a variety of acts. . . ."); *In re Tubbs*, 302 B.R. 290, 291 (Bankr.W.D.Ark.2003). The modern trend in civil contempt proceedings is for courts to award actual damages for violations of § 524's discharge injunction, *Hardy*, 97 F.3d at 1389, and, where necessary to effectuate the purposes of the discharge injunction, a debtor may be entitled to reasonable attorney fees. *See, e.g., In re Miller*, 247 B.R. 224, 228 (Bankr.E.D.Mich. 2000).

▮ Under the facts of this case, no damages will be awarded to Plaintiff without a causal connection between Defendant's violation of the injunction and the damages Plaintiff seeks. In order to establish a causal connection, she must establish at a minimum that the Defendant's conduct was a substantial factor in causing her damages. *See, e.g., Field v. Mans*, 516 U.S. 59, 71–72, 116 S.Ct. 437, 443–44, 133 L.Ed.2d 351 (1995) (applying principles of causation from "dominant consensus of common law jurisdictions" in context of 11 U.S.C. § 523(a)(2)(A)) (citing Restatement (Second) of Torts (1976)); *In re Dawson*,

346 B.R. 503 (Bankr.N.D.Cal.2006). Plaintiff's various claims for damages must be supported by showing that Defendant's conduct was a substantial factor in causing the damages.

■ Plaintiff submitted billing records for legal services provided between September 16, 2005, and November 11, 2005, which totaled $4,432.26. This Court will only award attorney fees to the extent they are reasonable and proportionate, and, in determining the reasonableness of attorney fees, a certain level of specificity and content in a billing statement is required. *See, e.g., In re McGuier*, 346 B.R. 151, 164 (Bankr.W.D.Pa.2006); *In re Consolidated Properties Ltd. Partnership*, 152 B.R. 452, 459 (Bankr.D.Md.1993). Applications for legal fees that do not itemize the legal services rendered or their value are "universally disallowed." *McGuier*, 346 B.R. at 164. Accordingly, in addition to the requirement of causation, this Court will not grant those legal fees to the Plaintiff that are inadequately presented in her exhibits.

■ Exhibits and testimony provided at trial establishes that Defendant did not file any pleadings in the Hardin Family Court with respect to the Plaintiff's obligation as to the 2002 Mazda until October 25, 2005. Because Plaintiff was in court for other legal issues with Defendant during this time, those legal fees accumulated anytime before October 25, 2005, could not have been with respect to the 2002 Mazda debt.[4]

Thus, this Court awards to Plaintiff $712.00 for all fees for legal services provided from October 27, 2005, to November 11, 2005, excluding those that are inadequately documented.[5]

Plaintiff also seeks an award for wages lost while attending various hearings in the Hardin Family Court. Although Plaintiff claimed at trial that she was forced to use thirty-six hours of vacation time for her various absences, in increments of eight-hour days, she admitted on cross-examination that she took leave from work for a full eight hours to attend some hearings even though her presence might not have been required, or, for a hearing scheduled for 1:00 p.m., only a partial-day absence was required. Plaintiff has presented proof of only one court date pertaining to the debt owed to U.S. Bank on the 2002 Mazda that would require her to take a full eight-hour leave from work, which was the November 1, 2005, hearing in the Hardin Family Court. Accordingly, for the reasons set forth above, this Court awards Plaintiff $191.20 for the eight hours of vacation leave used to attend the hearing regarding the U.S. Bank Debt.[6]

Plaintiff also seeks an award for medical expenses and wages lost while seeking treatment for anxiety and other medical problems allegedly suffered as a result of Defendant's attempts to collect the debts at issue. Plaintiff has failed to prove that Defendant's conduct was a sufficient contributing factor in bringing about her med-

4. The $997.50 charge for legal services rendered on October 25, 2005, did not pertain to the motion regarding the 2002 Mazda filed on that same day, according to the Plaintiff's testimony at trial.

5. An entry dated October 31, 2005, does not include a dollar amount or a complete statement of the legal services offered. Because neither the purpose nor the value of this entry can be ascertained from Plaintiff's exhibits, this Court will not attempt to award any damages for this charge. Additionally, this

amount does not include an entry dated November 11, 2005, for $87.30 as "mileage to Elizabethtown" for trips made on October 11 and 15, 2005, as these fees were for services offered before Defendant filed his October 25, 2005, motion.

6. Evidence presented at trial established that Plaintiff is paid $23.90 per hour. This number represents the eight hours of vacation at that pay rate.

ical condition. Plaintiff's Exhibit 9 features documentation from two different doctor visits, one dated September 22, 2004, and the other dated March 17, 2005.[7] In the earlier document, Plaintiff listed September 15, 2004, as the "approximate date the condition commenced"—more than one year prior to Defendant's improper motion in the Hardin Family Court. In the later document, Plaintiff listed March 9, 2005, as the commencement date for her condition. Both occurred at least six months before the Defendant's improper attempts to collect on the debt owed to U.S. Bank for the 2002 Mazda, and, for this reason, Plaintiff has failed to establish causation between Defendant's violation of the discharge injunction and Plaintiff's medical affliction. Plaintiff's claim for two $10 co-pays for different appointments with the doctor and two $15 co-pays for prescriptions also fails to establish causation between her medical treatment and the Defendant's improper conduct.

■ Plaintiff has also moved this Court to award her attorney fees for Plaintiff's Counsel in the contempt proceeding *sub judice*, in the amount of $9,317.12. The fees sought by Plaintiff under this motion are almost double the damages sought, though not awarded, for Defendant's conduct in violation of the discharge injunction. There being no contractual basis for an award of attorneys fees, this Court, in exercise of its broad discretion to fashion a remedy for violation of the discharge injunction, *In re Miller*, 247 B.R. 224, 228 (Bankr.E.D.Mich.2000), does not believe the facts of this case warrant an award of the attorney fees in this adversary proceeding.

A separate order consistent with the foregoing will be entered in accordance with Federal Rule of Bankruptcy Procedure 9021. A separate order consistent with the foregoing will also be entered with respect to Plaintiff's Motion For Award of Attorney Fees, filed on September 6, 2006.

### ORDER

THIS MATTER comes before the Court on motion of the complainant, Louisa R. Miles ("Plaintiff"), for an award of attorney fees from Zebedee Clarke ("Defendant") for legal services rendered by counsel for Plaintiff in the underlying core proceeding.[1] For the reasons set forth in the accompanying Memorandum Opinion, Plaintiff's motion is hereby DENIED.

---

**7.** I n her Affidavit In Support of Adversary Complaint Seeking a Finding of Contempt, Plaintiff states that her doctor visits were on August 17, 2005, and September 22, 2005. Neither date, however, appears anywhere in Exhibit 9. Furthermore, neither date stated in her affidavit occurred after Defendant's im-

proper filing, and, therefore, his conduct could not have been a substantial factor in causing Plaintiff's medical visits or the accompanying expenses.

**1.** *See* 28 U.S.C. § 157(b)(1)-(2).