By order of the Bankruptcy Appellate Panel, the precedential effect
of this decision is limited to the case and parties pursuant to
6th Cir. BAP LBR 8024-1(b).  See also 6th Cir. BAP LBR 8014-1(c).

File Name: 21b0003n.06

# BANKRUPTCY APPELLATE PANEL

## OF THE SIXTH CIRCUIT

IN RE:  FRANK R. RAGONE, JR.,

*Debtor*.

FRANK R. RAGONE, JR.,

*Plaintiff-Appellee*,

*v*.

STEFANIK & CHRISTIE, LLC; JOHN R. CHRISTIE,

*Defendants-Appellants*.

No. 20-8013

Appeal from the United States Bankruptcy Court for the Northern District of Ohio at Toledo;
No. 5:13-bk-51335; Adv. Proc. No. 3:18-ap-03070—John P. Gustafson, Judge.

Decided and Filed:  May 13, 2021

Before: CROOM, DALES, and WISE, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ON BRIEF:**  John R. Christie, LEWIS, BRISBOIS, BISGAARD & SMITH, LLP, Cleveland, Ohio, for Appellant Stefanik & Christie, LLC and in propria persona.  Mark H. Knevel, KNEVEL LAW CO. LPA, Garfield Heights, Ohio, for Appellee.

CROOM, J., delivered the opinion of the court in which WISE, J., joined.  DALES, J. (pp. 13–16), delivered a separate opinion concurring in part and dissenting in part.

---

## OPINION

---

JIMMY L. CROOM, Bankruptcy Appellate Panel Judge.  The issue in this appeal is whether the appellants, Stefanik & Christie, LLC ("Stefanik & Christie"), and attorney John R. Christie ("Christie") (collectively, "Appellants"), committed a sanctionable violation of 11 U.S.C. § 524[1] by continuing to pursue garnishment on a discharged debt and failing to turnover improperly garnished funds.  The bankruptcy court applied the Supreme Court's decision in *Taggart v. Lorenzen*, __ U.S. __, 139 S. Ct. 1795 (2019), and concluded that the Appellants' refusal to terminate the garnishment proceedings and failure to return the monies garnished post-discharge were objectively unreasonable.  The bankruptcy court sanctioned the Appellants $4,275.39 (the amount of funds garnished post-discharge from Ragone's wages) and $10,580.00 in attorney fees Ragone incurred in attempting to stop the garnishment and recover the improperly garnished funds through both state and bankruptcy court proceedings.

In sanctioning the Appellants in this case, the bankruptcy court correctly interpreted the discharge injunction set forth in § 524(a)(1) and (2), the law governing violations of the discharge injunction, and the standard for imposing sanctions thereunder.  It also correctly determined that Christie could be held personally liable for the actions he took as counsel for Stefanik & Christie.  Lastly, Appellants did not identify any erroneous factual findings by the bankruptcy court.  For the reasons set forth below, we AFFIRM.

### ISSUE ON APPEAL

The sole issue on appeal is whether the bankruptcy court erred in its determination that Christie, individually, and Stefanik & Christie committed sanctionable violations of the discharge injunction in § 524(a).[2]

---

[1]Unless otherwise noted, all references are to title 11 of the United States Code.

[2]The Appellants raise a number of issues on appeal, many of which relate to the § 362(a) automatic stay. The bankruptcy court dismissed Ragone's § 362 claim with prejudice; consequently, the Appellants' arguments related thereto are moot.

## JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Northern District of Ohio has authorized appeals to the Panel, and no party has timely elected to have this appeal heard by the district court. 28 U.S.C. § 158(b)(6), (c)(1). A final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). "Orders in bankruptcy cases qualify as 'final' when they definitively dispose of discrete disputes within the overarching bankruptcy case." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, __ U.S. __, 140 S. Ct. 582, 586 (2020) (citing *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501 (2015)). An order finding a party in contempt and imposing sanctions is a final order for purposes of appeal. *Wicheff v. Baumgart* (*In re Wicheff*), 215 B.R. 839, 843 (B.A.P. 6th Cir. 1998) (citing *U.S. Abatement Corp. v. Mobil Expl. & Producing U.S., Inc.* (*In re U.S. Abatement Corp.*), 39 F.3d 563, 566–67 (5th Cir. 1994)).

The bankruptcy court's determination that the Appellants violated the discharge injunction presents a mixed question of law and fact. *Ford Motor Credit Co. LLC v. Morton* (*In re Morton*), 410 B.R. 556, 559 (B.A.P. 6th Cir. 2009). The court's interpretation of § 524 is reviewed de novo. *Id.* "Under a de novo standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *Menninger v. Accredited Home Lenders* (*In re Morgeson*), 371 B.R. 798, 800 (B.A.P. 6th Cir. 2007) (citation omitted). The court's determination that a party violated the discharge injunction and the imposition of sanctions are reviewed for an abuse of discretion. *Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 550 (6th Cir. 2015) (citing *Harrison v. Metro. Gov't of Nashville*, 80 F.3d 1107, 1112 (6th Cir. 1996)); *B-Line, LLC v. Wingerter* (*In re Wingerter*), 594 F.3d 931, 936 (6th Cir. 2010). "An abuse of discretion occurs only when the [trial] court relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *Kaye v. Agripool, SRL* (*In re Murray, Inc.*), 392 B.R. 288, 296 (B.A.P. 6th Cir. 2008) (internal quotation marks and citation omitted); *see also Mayor of Balt., Md. v. West Virginia* (*In re Eagle-Picher Indus., Inc.*), 285 F.3d 522, 529 (6th Cir. 2002) ("An abuse of discretion is defined as a 'definite and firm conviction that the [court below] committed a clear error of judgment.' " (citation omitted)). "The question is not how the reviewing court would have ruled,

but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *Barlow v. M.J. Waterman & Assocs., Inc.* (*In re M.J. Waterman & Assocs., Inc.*), 227 F.3d 604, 608 (6th Cir. 2000) (citation omitted).

## FACTS

Although the history of the debt and the relationships among the various parties are somewhat convoluted, the facts germane to the appeal are relatively straightforward and, for the most part, undisputed.

In April 2013, an Ohio State Court awarded Pizza Pan Elyria, LLC, a judgment against Ragone in the amount of $28,300.00, plus interest at the rate of 6.5% per annum from September 9, 2009, plus attorney's fees and costs of the action (the "Judgment").

Ragone filed a chapter 7 petition for bankruptcy relief on May 8, 2013, in the Northern District of Ohio. During the bankruptcy case, the judgment creditor assigned the Judgment to Stefanik & Christie.

Due to Ragone's failure to file a certificate of attendance for the post-petition financial management course required by § 727(a)(11), the bankruptcy court administratively closed Ragone's case without a discharge on February 8, 2014. On June 6, 2014, Christie filed an Order and Notice of Garnishment in a pending garnishment action ("Garnishment Action") in the Cleveland Municipal Court. On June 19, 2014, Ragone filed a motion to reopen his bankruptcy case, along with proof of his attendance at the required financial management course. The bankruptcy court granted Ragone's motion to reopen his case and issued an order of discharge on June 18, 2015, before closing the case again on June 23, 2015.

Ragone's wages continued to be garnished following his discharge. In March 2016, Ragone's attorney, Robert C. Wentz ("Wentz"), contacted Christie via telephone to address the garnishment. At trial, Wentz testified that "Christie was not amenable to dismissing or terminating the wage garnishment" at that time. (Jan. 18, 2019 Aff. of Robert C. Wentz at 1,

Adv. Proc. No. 18-03070, ECF No. 25-1 at 47; *see also* Tr. of Aug. 12, 2019 Hr'g ("Trial Tr."), Adv. Proc. No. 18-03070, ECF No. 64 at 15.)

The Appellants did not dispute that Christie spoke with Wentz in March 2016; however, they claimed that Wentz failed to provide any documentation of Ragone's discharge at that time. Consequently, Christie asserted that because he does not practice bankruptcy law, he wanted time "to investigate [the] matter further" before taking any action in the state court proceedings. (Trial Tr. at 21.)  Christie also admitted that his investigation into the matter took "longer than maybe it could have" once he learned about Ragone's bankruptcy discharge.  (*Id*. at 108.)

Ragone filed an "Emergency Motion to Stay Disbursements and Terminate the Wage Garnishment" ("Emergency Motion") in the Garnishment Action on April 8, 2016, which he served on Christie that day along with a cover letter ("April 2016 Letter") stating that the Judgment was discharged in his chapter 7 case.  (April 2016 Letter at 1, Adv. Proc. No. 18-03070, ECF No. 25-1 at 49.)  On May 17, 2016, the Appellants filed a brief in opposition to the Emergency Motion in the Garnishment Action.  Three days later, Stefanik & Christie filed a motion to reopen Ragone's bankruptcy case and revoke his discharge.

Ragone filed a response[3] indicating that he had no objection to reopening his case and that "the reopening of the case will assist in the resolution of issues arising subsequent to the closing [of] debtor's bankruptcy."  (Resp. to Mot. to Reopen, Bankr. Case No. 13-51335, ECF No. 44 at 1.)  At the June 15, 2016 hearing, the bankruptcy court granted the motion to reopen, but noted that the request to revoke Ragone's discharge "might require an adversary proceeding" and ordered Stefanik & Christie to "take further action to prosecute the case."  (Order to Show Cause at 2, Bankr. Case No. 13-51335, ECF No. 48.)  As such, the court continued the hearing on the discharge revocation request to July 20, 2016.

On July 13, 2016, the state court granted the Emergency Motion and dismissed the Garnishment Action.  The docket entry for the dismissal indicates that "Full Release of the Attached Funds is to Issue to Debtor Frank Ragone."  (Trial Ex. 5 at 15.)

---

[3]Upon the advice of Wentz, Ragone hired a bankruptcy practitioner to respond to Stefanik & Christie's motion to reopen and to take over representation in the Garnishment Action.  On June 10, 2016, attorney Mark Knevel ("Knevel") substituted as Ragone's attorney in the bankruptcy case.

After Stefanik & Christie failed to appear at the July 20, 2016 hearing and received several continuances on a subsequent show cause hearing, Stefanik & Christie eventually filed another motion to revoke Ragone's discharge. The bankruptcy court issued an order denying the motion to revoke discharge without prejudice to Stefanik & Christie filing an adversary proceeding or "tak[ing] other procedurally proper steps to prosecute any claims" by October 31, 2016. (Prelim. Order on Order to Show Cause at 3, Bankr. Case No. 13-51335, ECF No. 60.) The Appellants never filed an adversary proceeding or took any further steps to revoke Ragone's discharge. At trial, Christie testified that, after consulting with bankruptcy attorneys, he determined that his revocation claim was not viable. As such, he decided not to pursue it. The bankruptcy court re-closed Ragone's case on November 8, 2016.

Exactly one year later, Ragone filed a motion to reopen his bankruptcy case for the purpose of filing an adversary proceeding to enforce the automatic stay and the discharge injunction against the Appellants and others. The bankruptcy court granted that motion on November 26, 2017.

Ragone filed an adversary complaint against several parties, including the Appellants, on February 5, 2018. He asked the bankruptcy court to find all defendants in contempt for violating the automatic stay of § 362 and the discharge injunction of § 524, and for sanctions including actual damages, punitive damages, and legal fees and expenses. With respect to the Appellants, Ragone asserted that once they learned of his chapter 7 discharge in March 2016 their continued garnishment of his income and failure to turn over the garnished funds violated both the automatic stay and the discharge injunction. Ragone also asserted that the Appellants had filed "spurious motions" in the bankruptcy court and failed to act on those motions "with the intent to delay and ultimately deny the return of [the] wrongfully garnished wages." (Compl. at 5, Adv. Proc. No. 18-03070, ECF No. 1.) Ragone asserted that a total of $10,993.66 had been garnished by his employer, Mars Electric, and distributed to the defendants in the Garnishment Action.

Ragone voluntarily dismissed his claims against all the defendants except the Appellants on June 6, 2018. The Appellants filed a motion for summary judgment on December 14, 2018. They asserted that they had no knowledge of the bankruptcy filing or discharge until March 2016. Once they learned of the bankruptcy, the Appellants asserted, they agreed to terminate the

garnishment; however, this assertion is untrue.   As the record reflects, Stefanik & Christie continued to litigate in state court until the Garnishment Action was dismissed in July 2016.

The bankruptcy court denied the Appellants' motion for summary judgment on May 21, 2019.  In so doing, the bankruptcy court concluded there were genuine disputes as to material facts on two issues:  (1) whether the Appellants had actual, constructive, or imputed notice of the automatic stay and chapter 7 discharge; and (2) whether all funds that were garnished post-discharge were returned to Ragone.

Following trial on August 12, 2019, the bankruptcy court issued an opinion and judgment on March 31, 2020, holding the Appellants in contempt of the § 524 discharge injunction and awarding damages to Ragone.

## DISCUSSION

Section 524(a)(1) and (2) of the Bankruptcy Code provide that a discharge in bankruptcy

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1192, 1228, or 1328 of this title, whether or not discharge of such debt is waived;

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]

11 U.S.C. § 524(a)(1) and (2).   These subsections, along with § 524(a)(3), are commonly referred to as the "discharge injunction."  Once a discharge is issued, § 524(a)(1) and (2) "void[ ] any judgment that establishes personal liability for a discharged debt" and prohibit creditors from pursuing collection efforts against debtors personally for such debts.  *In re Joseph*, 584 B.R. 696, 701 (Bankr. E.D. Ky. 2018).  "The purpose of § 524(a) is to afford a debtor a 'fresh start' by ensuring that a debtor will not be pressured in any way to repay a debt after it has been discharged."  *Paglia v. Sky Bank* (*In re Paglia*), 302 B.R. 162, 166 (Bankr. W.D. Pa. 2003) (citation omitted).

The § 524 discharge injunction arises " 'automatically, with no need for the debtor to assert the discharge to render the judgment void.' " *Hamilton v. Herr* (*In re Hamilton*), 540 F.3d 367, 373 (6th Cir. 2008) (quoting 4 Collier on Bankruptcy ¶ 4-524.02[1], p. 524–14 (rev. 15th ed. 2005)). "To that end, '[t]he purpose of § 524(a) is to ensure that when a bankruptcy court enters an order discharging a debtor's outstanding debts, the debtor will be automatically protected against future attempts to collect on the discharged debts.' " *In re Jones*, 603 B.R. 325, 332 (Bankr. E.D. Ky. 2019) (quoting *Isaacs v. DBI-ASG Coinvester Fund, III, LLC* (*In re Isaacs*), 895 F.3d 904, 910 (6th Cir. 2018)). Because state court garnishment proceedings impose personal liability on a debtor, a judgment that is discharged in a bankruptcy proceeding cannot "support a pending garnishment." *In re Leatherwood*, No. 17-50551, 2021 WL 726072, at *3 (Bankr. E.D. Mich. Feb. 23, 2021) (citations omitted); *In re Schultz*, 461 B.R. 424, 426 (Bankr. W.D. Mich. 2011) (recognizing that when a bankruptcy discharge voids a creditor's judgment, "proceedings supplemental to the judgment, such as [a] garnishment proceeding in the state court, are moot.").

Although there is no private right of action under § 524, courts enforce the discharge injunction through their civil contempt power. *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 422 (6th Cir. 2000). "[A] court may hold a creditor in civil contempt for violating a discharge order if there is *no fair ground of doubt* as to whether the order barred the creditor's conduct." *Taggart v. Lorenzen*, __ U.S. __, 139 S. Ct. 1795, 1799 (2019). Stated differently, "civil contempt may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful." *Id.* The contempt inquiry is a two-step one. *In re Distefano*, 611 B.R. 100, 102 (Bankr. W.D. Mich. 2019). First, a court must determine whether the creditor's actions violated the discharge injunction. Second, the court must determine "whether there was any objectively reasonable basis for believing that the [action] did not violate the discharge." *Id.* The debtor carries the burden of proving that the creditor committed a sanctionable violation of the discharge injunction by clear and convincing evidence. *In re City of Detroit, Mich.*, 614 B.R. 255, 265–66 (Bankr. E.D. Mich. 2020).

The willfulness of a creditor's actions is not a consideration in determining whether a creditor has violated the discharge injunction. *Taggart*, 139 S. Ct. at 1802 (citation omitted). Additionally,

> [a] "creditor's good faith belief" that the discharge injunction does not apply to the creditor's act that violated the discharge injunction does not by itself preclude a civil contempt sanction. . . . Conversely, it is not sufficient to hold a creditor in civil contempt by finding that "the creditor was aware of the discharge order and intended the actions that violated the order."

*Orlandi v. Leavitt Family Ltd. P'ship* (*In re Orlandi*), 612 B.R. 372, 382 (B.A.P. 6th Cir. 2020) (quoting *Taggart*, 139 S. Ct. at 1799-1803). However, when a creditor learns of a debtor's discharge and has "no objectively reasonable basis for concluding that" its ongoing wage garnishment activity would not violate the discharge injunction, then there is no "fair ground of doubt" to support the belief that the creditor can continue to garnish the debtor's wages or retain improperly garnished funds. *Taggart*, 139 S. Ct. at 1801, 1804; *see also In re Banks*, 577 B.R. 659, 667 (Bankr. E.D. Va. 2017) (stating that creditor "had the affirmative duty to remit to the Debtor the wages [creditor] had unlawfully garnished" post-discharge); *In re LeGrand*, 612 B.R. 604, 614 (Bankr. E.D. Cal. 2020) (finding violation of automatic stay continued post-discharge, violating the discharge injunction, when judgment creditor did not terminate wage garnishment after learning that a discharge had been entered and did not satisfy the "baseline" of "good faith" by terminating garnishment and "mak[ing] the debtor whole"); *In re Brown*, Case No. 14-11080-JDW, 2019 WL 3934384 (Bankr. N.D. Miss. July 24, 2019) (finding sanctionable violation of discharge injunction based on failure to terminate wage garnishment after being informed of discharge, and noting in context of calculating damages that creditor returned improperly garnished funds after debtor filed motion for contempt).[4]

In the case on appeal, the bankruptcy court properly set forth the law regarding violations of § 524(a). It also correctly applied the *Taggart* standard to Ragone's case and determined that

---

[4]In his separate opinion concurring in part and dissenting in part ("Separate Opinion"), our colleague raises concerns following the Supreme Court's recent decision in *City of Chicago v. Fulton*, __ U.S. __, 141 S. Ct. 585 (2021). *City of Chicago* dealt with creditors' rights in the context of the automatic stay of § 362 where turnover had not yet been ordered, and not the discharge injunction in § 524. The Panel does not need to construe *City of Chicago* to resolve the issues presented in this appeal.

the Appellants had no objectively reasonable basis for refusing to terminate the Garnishment Action and return the funds that had been improperly garnished following Ragone's discharge. In so doing, the court enumerated several specific facts supporting its decision, none of which are disputed in this appeal. These findings included (1) Christie is a licensed attorney who engages in collections work; (2) Christie had access to the advice of experienced bankruptcy attorneys in this case; (3) Christie continued to litigate the Garnishment Action for months after learning of Ragone's discharge; (4) Christie took months to investigate Wentz's claim that Ragone had received a discharge when a simple search of the court's publicly accessible records would have confirmed such a fact; and (5) at the time of the trial in the bankruptcy court, the Appellants still had not returned the funds that were improperly garnished post-discharge to Ragone.

Once the Appellants had no fair ground of doubt that the Judgment had been discharged, they were under an obligation to dismiss the Garnishment Action and return all funds garnished after the June 18, 2015 discharge to Ragone. The Appellants did neither of these things. They continued litigating the Garnishment Action by objecting to the Emergency Motion Wentz filed on April 9, 2016. Although it is true that the state court stopped disbursing wages to the Appellants at that time, it did so because Ragone filed the Emergency Motion, not because the Appellants asked the court to do so. The bankruptcy court did not err in concluding that the Appellants' actions after receiving notice of Ragone's discharge in the April 2016 Letter were contemptuous.

Next, the bankruptcy court did not err in imposing joint and several liability on the Appellants for the discharge injunction violation. Numerous bankruptcy courts around the country have imposed joint and several liability on counsel and their clients for violations of the discharge injunction. *See*, *e.g.*, *In re Joseph*, 584 B.R at 702; *In re Plummer*, 513 B.R. 135, 148 (Bankr. M.D. Fla. 2014); *Bailey v. Davant* (*In re Bailey*), 428 B.R. 694, 698-99 (Bankr. N.D. W. Va. 2010) (holding debtor's ex-wife and ex-wife's counsel jointly and severally liable for failing to "take any affirmative steps to release [a] pre-petition garnishment of the Debtor's wages" once they learned of the debtor's bankruptcy filing); *Pague v. Harshman* (*In re Pague*), Bankr. No. 3:01-bk-32061, Adv. No. 3:09-ap-00071, 2010 WL 1416120, at *6 (Bankr. N.D. W. Va. April 5,

2010); *Burton v. Mouser* (*In re Burton*), Bankr. No. 08-10013(1)(7), Adv. No. 08-1019, 2010 WL 996537, at *4 (Bankr. W.D. Ky. Mar. 16, 2010); *In re Jones*, 389 B.R. 146, 166-67 (Bankr. D. Mont. 2008).

Christie's sole argument on joint and several liability is that, as a matter of law, the bankruptcy court erred in assessing sanctions against him personally as a result of his membership interest in Stefanik & Christie. This is not what occurred. The liability the bankruptcy court imposed on Christie in this case was not based on Christie's membership interest in Stefanik & Christie, but rather on the actions he took as creditor's counsel. The bankruptcy court found that, as the collections lawyer, Christie improperly prolonged the Garnishment Action and failed to turn over the funds that were improperly garnished post-discharge. He did this after having actual knowledge of the discharge and with no objectively reasonable basis to conclude that his actions were lawful. Although Ohio law protects members of an LLC from liability based solely on a membership interest, it does not offer the same protection when a member undertakes his "own acts or omissions." Ohio Rev. Code § 1705.48(D). Moreover, the bankruptcy court's unchallenged factual finding was that Christie received some personal benefit from the bankruptcy estate. Thus, the imposition of liability on Christie was not in error.

Lastly, with respect to the amounts awarded as sanctions to Ragone, "[t]he modern trend in civil contempt proceedings is for courts to award actual damages for violations of § 524's discharge injunction, . . . and, where necessary to effectuate the purposes of the discharge injunction, a debtor may be entitled to reasonable attorney fees." *Miles v. Clarke* (*In re Miles*), 357 B.R. 446, 450 (Bankr. W.D. Ky. 2006) (citations omitted)); *In re Miller*, 247 B.R. 224, 228 (Bankr. E.D. Mich. 2000) ("This Court agrees that a debtor who is injured by a willful violation of the discharge injunction is entitled to damages, including reasonable attorney fees."), *aff'd*, *Chateau Cmtys. v. Miller* (*In re Miller*), 252 B.R. 121 (E.D. Mich. 2000), *aff'd*, *Miller v. Chateau Cmtys.* (*In re Miller*), 282 F.3d 874 (6th Cir. 2002). Actual damages for garnishments that violate § 524(a) may include all wages that were improperly garnished regardless of when the creditor learned of the discharge. *In re Banks*, 577 B.R. at 668; *United Healthcare Workerswest v. Borsos* (*In re Borsos*), 544 B.R. 201, 211–12 (Bankr. E.D. Calif. 2016); *In re*

*Leatherwood*, 2021 WL 726072, at \*4.  "Because [a] violation of the discharge injunction is a transgression against the bankruptcy court's order, broad discretion is invested in the court in selecting an appropriate sanction."  *Badovick v. Greenspan* (*In re Greenspan*), No. 10-8019, 2011 WL 310703, at \*5 (B.A.P. 6th Cir. Feb. 2, 2011) (citing *In re Miles*, 357 B.R. at 450) (other citations omitted)).

Appellants do not argue that the bankruptcy court improperly calculated the amounts it awarded; rather, they contest whether any amount should have been awarded.[5]  As the Panel disagrees with Appellants' arguments on their liability, and Appellants do not challenge the reasonableness of the amounts awarded or otherwise identify any alleged abuse of discretion on this issue, the Panel will not disturb the bankruptcy court's award.

## CONCLUSION

For the reasons stated, the Panel affirms the bankruptcy court's March 31, 2020 memorandum opinion and order.

---

[5]In particular, Christie assigns no error to the various components of the sanction levied against him.  Our colleague takes up the issue *sua sponte* in his Separate Opinion in concluding that the bankruptcy court abused its discretion by holding Christie jointly and severally liable for the amount of the garnished funds.  This argument is at worst not preserved, at best not developed, and should not be addressed in this appeal.  "In our adversarial system of adjudication, we follow the principle of party presentation[,]" which counsels that courts should allow the parties to shape their own appeal. *United States v. Sineneng-Smith*, __ U.S. __, 140 S. Ct. 1575, 1579, 1581–82 (2020).

---

**CONCURRING IN PART AND DISSENTING IN PART**

---

SCOTT W. DALES, Bankruptcy Appellate Panel Judge. I concur in the Panel's decision to affirm the contempt finding and award as to Stefanik & Christie, LLC ("Stefanik & Christie") but respectfully dissent, in part, regarding the ruling as to attorney John R. Christie ("Christie").

Like my colleagues, I would affirm the bankruptcy court's conclusion that Christie's (and his firm's) response to chapter 7 debtor Frank R. Ragone's discharge, after Attorney Wentz gave them notice, was contemptuous. The bankruptcy court acted within its discretion in concluding that there was no objectively reasonable excuse for continuing the garnishment proceedings after Ragone's counsel's notified Christie of the discharge. Similarly, I read the injunctive mandate of § 524(a)(2) as applicable to creditors and their counsel, alike. Because there was no "fair ground of doubt" as to whether continuing the garnishment proceedings might be lawful after getting notice of the discharge, the creditor and its counsel both subjected themselves to liability for their contempt, as the bankruptcy court properly found, and as would have been the case with any non-statutory federal injunction. *See* Fed. R. Civ. P. 65(d)(2)(B); *Taggart*, 139 S. Ct. 1795, 1801 (2019) (incorporating usual injunction practice into discharge litigation). Their contumacious refusal to withdraw the garnishment writ in response to Mr. Wentz's call and letter justified Ragone in commencing the contempt proceedings. The bankruptcy court most certainly did not abuse its discretion in awarding attorney's fees to compensate him for the expense he reasonably incurred in vindicating his rights under the discharge, including seeking an order directing Stefanik & Christie to disgorge the proceeds of the garnishment the firm obtained before it had notice of the discharge. *See, e.g.*, *United Healthcare Workerswest v. Borsos (In re Borsos)*, 544 B.R. 201 (Bankr. E.D. Calif. 2016) (explaining restitution rights arising from collection on subsequently voided judgment). To the extent that Christie bears the cost of Ragone's attorneys fees for the firm's refusal to disgorge the $4,275.39, I would regard that as a permissible, nonserious sanction within the bankruptcy court's authority as contemplated in *Adell v. John Richards Homes Bldg. Co.*, (*In re John Richards Homes Bldg. Co.*), 552 F. App'x 401, 416 (6th Cir. 2013).

I part ways, however, with the Panel's affirmance of the bankruptcy court's decision to require Christie, himself, to disgorge the $4,275.39 that Stefanik & Christie successfully garnished in its unwitting violation of the discharge. The bankruptcy court based its conclusion that Appellants acted in contempt of the discharge injunction not on the fact that Stefanik & Christie obtained those funds before they were aware of the discharge, but rather on the firm's refusal "to turnover the monies garnished after Plaintiff-Debtor's discharge was entered,"[1] once they learned of the discharge. The court justified the award against Christie based on his own contemptuous conduct in retaining the funds, but Ragone presented no evidence, clear and convincing or otherwise, that Christie received the $4,275.39, and therefore no evidence establishing that Christie retained any funds at all. For his part, Christie testified that although his firm received the garnished funds, he did not. The bankruptcy court regarded as significant Christie's admission "he did receive some personal benefits when Defendant Firm received money,"[2] but in his testimony Christie admitted only that that he got paid as the firm's employee, along with other employees.[3] Throughout the trial,[4] and in their briefs on appeal,[5] the Appellants maintained the distinction between Christie and his firm, thereby preserving the issue for appeal. So, unless the bankruptcy court had somehow pierced the corporate veil (which it appeared unwilling to do expressly) there was no basis for finding that Christie *retained* funds that, strictly speaking, he did not receive, even if the creditor who received the funds paid his salary. Without

---

[1]Mem. of Decision & Order ("Decision") at 15, Adv. No. 18-03070, ECF No. 46, March 31, 2020.

[2]Decision at 8.

[3]Transcript of Bench Trial Proceedings Before the Hon. John P. Gustafson ("Tr.") at 101:25–102:14, Adv. No. 18-03070, ECF No. 64, August 12, 2019.

[4]Tr. at 73:1–4, 73:23–25; 75:18–20; 90:7–9; 97:19–98:6; 101:25–102:14; 110:16–21; 111:23–112:3; 121:18–122:9.

[5]"In other words, regardless of any liability that may exist on behalf of Stefanik & Christie . . . there certainly cannot be any liability as to any of the individual members or managers of the LLC. Therefore, the claims against John R. Christie must fail as a matter of law. . . . To find otherwise would expose every stockholder to claims for any corporate misdeeds by any entity that they have any ownership interest in, radically changing liability laws." *See* Appellants' Br. at 8, BAP No. 20-8013. The argument continues: "Mr. Christie acted as an employee of Stefanik & Christie. His actions, as well as other members of the firm, were all taken in furtherance of the LLC. No evidence was proffered, nor does any exist, to suggest personal gain by Mr. Christie." *Id*. at p. 11. In the reply brief, the Appellants amplified the distinction between Christie and the firm: "there still in [sic] no basis for a claim against Christie personally" and ". . . Christie received no additional compensation either due to his ownership shares, nor any bonus, as a result of this matter. In other words, Christie and other members of his firm were doing their jobs as employees of S&C." *See* Appellants' Reply Br. at 9.

a finding, by clear and convincing evidence, that Christie was the alter ego of his firm, requiring him to disgorge the $4,275.39 that he did not receive amounts to an abuse of discretion. It also effectively makes Christie his client's guarantor, with the attendant risk of chilling attorney-client relationships in future cases. I acknowledge that courts are bound by law and tradition to decide only the issues before them, but that same tradition requires them also to consider the practical impact of their decisions. We should tread lightly here lest we inadvertently drive a wedge between creditors and their counsel upon whom we all depend to encourage their clients to conform their conduct to the law, including § 524. *Cf. Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (noting, in the context of privilege, the role that communication between attorney and client plays in "promot[ing] broader public interests in the observance of law and administration of justice.")

We should also be careful not to suggest, as the bankruptcy court and the Panel seem to, that retention of funds garnished in violation of the discharge (but also in ignorance of it) is automatically contemptuous. Although the Appellants here made no effort to suggest any inability to disgorge the $4,275.39,[6] it is not difficult to imagine a future case involving an impecunious creditor who garnishes funds after, but without knowledge of, a discharge, and who, though willing, is simply unable to return the funds. Such a case, despite a clear violation of the discharge, would probably not warrant contempt sanctions under *Taggart*'s "old soil." *Taggart*, 139 S. Ct. at 1801 (drawing on the "old soil" of injunction practice in construing § 524); *United States v. Rylander*, 460 U.S. 752, 757 (1983) ("Where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action."); *Maggio v. Zeitz* (*In re Luma Camera Serv., Inc.*), 333 U.S. 56, 71–72 (1948) (in a civil contempt proceeding a defendant may assert a present inability to comply with the order in question). Moreover, the tenor and text of *City of Chicago v. Fulton*, __ U.S. __, 141 S. Ct. 585 (2021), with its reliance on the dictionary definitions of the word "act" (which appears in both §§ 362(a) and 524(a)), undermines the Panel's seeming premise that retention of funds obtained in violation of the discharge but without notice of it, is always a contemptuous "act." *Cf. Cohen*

---

[6]As just noted, Christie attempted to avoid disgorgement by testifying that he did not personally receive the funds and by drawing a distinction between a firm and its owners.

*v. de la Cruz*, 523 U.S. 213, 220 (1998) (there is a "presumption that equivalent words have equivalent meaning when repeated in the same statute"). We are not at risk of plowing *Taggart*'s "old soil" into "paydirt" for creditors simply by acknowledging that retention of funds seized without knowledge of the discharge is not invariably contemptuous.

I certainly agree with the Panel's conclusion that a creditor has an obligation to return funds obtained through the benighted, post-discharge collection of a void judgment, but I raise the hypothetical vignette of the struggling creditor to illustrate the fallacy of assuming that the failure to return funds obtained in violation of the discharge is always contemptuous. Instead, restitution to prevent a creditor's unjust enrichment, coupled with the court's authority under § 105(a) as *Taggart* itself suggests, may provide relief necessary to "carry out the provisions" of title 11, including § 524(a), in cases involving non-contemptuous discharge violations. *See Borsos*, *supra;* 4 Collier on Bankruptcy ¶ 524.02 (16th ed. 2021) ("Nothing in the *Taggart* decision suggests that a court cannot order reversal of actions taken in violation of the injunction, such as by awarding restitution of property improperly taken."). In the present case, although Christie's uncontradicted testimony that he received no garnished funds and his arguments based on the principle of limited liability persuade me that he should not bear the cost of disgorging the funds his firm received in violation of the discharge (but without knowledge of it), his firm, in contrast, offered no meaningful defense to disgorgement. Under the circumstances, the bankruptcy court properly found the firm liable to return the funds, either to compensate Ragone for the firm's contempt or to prevent its unjust enrichment under §§ 105(a) and 524(a).

For these reasons, I would affirm in part and reverse in part. I agree with my colleagues that the Appellants are both liable to Ragone for the attorney's fees as awarded; I agree that Stefanik & Christie (the firm) must disgorge the $4,275.39 it received in reliance on the void judgment; but I would relieve Christie of any obligation to repay the $4,275.39 because the evidence does not support a finding that he personally held or retained those funds or contemptuously assisted the firm in obtaining them in the first place, before either had notice of the discharge.